

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **KEVIN H. MCKENNA** | |
| *Plaintiff,* | **CASE NO. C2 05 976** |
| vs. | **JUDGE MARBLEY** |
| **NESTLE PURINA PETCARE CO.** | |
| *Defendant.* | **MAGISTRATE JUDGE KEMP** |

## PLAINTIFF'S ( I. ) - MOTION FOR EVIDENTIARY RULING, AND SUBSEQUENT ORDER FOR DEFENDANT TO DISCLOSE ALL INVESTIGATIVE DOCUMENTS WITHHELD *OR ALTERNATIVELY*, ( II. ) – MOTION FOR A COURT ORDER COMPELLING DEFENDANT'S DISCLOSURE OF DOCUMENTS WITHHELD UNDER CLAIM OF PRIVILEGE.

The Plaintiff, Kevin H. McKenna, respectfully requests this Court Order the Defendant, Nestle Purina PetCare Co., disclose any and/or all documents, communications and things, inclusive of any and/or all items which have otherwise been withheld from disclosure under claim of Attorney/Client privilege and/or the work-product doctrine. The reasons in support of this request are set forth within the accompanying "Memorandum in Support".

Respectfully Submitted,

Kevin H. McKenna, Plaintiff (Pro Se)
kmckenn@columbus.rr.com
4885 Adamsville Road
Zanesville, Ohio 43701
(740)452-3124

## **MEMORANDUM IN SUPPORT**

### **A. – ARGUMENT FOR MOTION FOR EVIDENTIARY RULING, AND SUBSEQUENT ORDER OF DISCLOSURE**

The Plaintiff, Kevin H. McKenna believes the Defendant, Nestle Purina PetCare Co., is unjustly withholding critical evidence from discovery under claim of Attorney/Client Privilege and/or the Work Product Doctrine. As such, the Plaintiff does not view the issue as a "Discovery Dispute", rather, the Plaintiff believes it is a matter of interpretation of Rules of Discovery, Law and "Rules of Evidence", and therefore not for the parties in this case to attempt to resolve among themselves. The Plaintiff therefore does not bring *this* Motion to this Court under the context of Motion to Compel, nor does the Plaintiff seek this Ruling and subsequent Order as a "Sanction" against the Defendant.

The Plaintiff will now attempt to articulate why it is he believes the evidence is being withheld, without legal merit:

### **Faragher – Ellerth Defense, "Implied Waiver"**

The Defendant has raised the Faragher – Ellerth Affirmative Defense(s) within their Answer to the Complaint (re: docket item [8]), where to avoid liability the defense(s) demonstrate that (1) the employer exercised reasonable care to prevent or promptly correct any harassment, (Defendant's "Tenth Defense") and (2) the plaintiff unreasonably failed to take advantage of the employer's preventive measures (Defendant's "Eighth Defense"). By raising the Faragher – Ellerth Affirmative Defense, the Defendant makes their internal investigation(s) "at issue", and creates an "implied wavier" of otherwise privileged communication(s) and documents. The Defendant simply cannot raise a defense stating that their claimed actions were pure and in good faith, while at the same time concealing the exact documents and

communications that would otherwise support such a claim. Because the Defendant's claimed defense The Defendant must disclose all documents, which are in support of that Defense.[1]

### Affirmative Defense, makes the claimed, privileged communications, "At Issue"

The Defendant also raises an additional Affirmative Defense, where it claims, "Plaintiff was terminated for a legitimate, non-discriminatory reason." (Defendant's "Eleventh Defense"). By doing so, the Defendant has made its investigation (and therefore inclusive of otherwise privileged communications within that investigation) into the Plaintiff's alleged misdeeds, "at issue". Again, the Defendant simply cannot raise a defense stating that their claimed actions were pure and in good faith, while at the same time concealing the exact documents and communications that would otherwise support such a claim. The Defendant has in fact submitted a partial *"privilege log concerning documents being withheld from the investigative file concerning plaintiff's internal complaint about sexual harassment"* pursuant to this Courts May 17, 2006 Order where it itemizes no less than forty-two (42) "privileged" communications within a two week time span immediately preceding the Plaintiff's termination of employment (see "Attachment A"). The Defendant must disclose all documents, which are in support of this Defense.

---

[1] McGrath v. Nassau County Health Care Corporation, 204 F.R.D. 240 (EDNY 2001) (*"it is unfair to McGrath to allow NHCC to invoke the Faragher-Ellerth defense while at the same time protecting the documents NHCC itself has put at issue..."*); Pray v. The New York City Ballet Company, 1997 WL 266980 (SDNY) (*"Thus, an employer may not prevent discovery of such an investigation based on attorney-client or work-product privileges solely because the employer has attorneys to conduct its investigation... The employer has waived the protection of these privileges concerning the investigation and subsequent remedial action by virtue of its defense."*)

## Crime – Fraud Exception

There simply can't be anything more relevant in a Wrongful Termination Law Suit, than forty-two (42) allegedly legal communications within a two-week time span immediately preceding the termination of an employee who claims to have been retaliated against for exercising his Civil Rights (IE – "Wrongful Termination"). Commonsense dictates at least two things: 1) Forty-two communications with alleged legal counsel is far from any norm, in the termination of any employee. 2) Any Defendant who had genuinely terminated an employee for just and legal cause would want to make their legal communications immediately preceding the employees termination the prominent centerpiece of their defense(s).

The grossly voluminous, fraudulent propaganda of which the Defendant has pompously paraded in their attempt to "sell" their case to the EEOC, and now this Court exceeds the capacity of the Plaintiff to articulate, let alone within this memorandum, and thus I will spare this Court the agony of attempting to assimilate it. Instead the Plaintiff will attempt to expose the fraud with two very finite samples.

## SAMPLE #1

1) It is a well established, uncontested fact, that the Plaintiff's conversations with the Defendant's HR Manager, Carol Kagenski incontestably concerned Nancy Goss, and to a lesser extent Lisa Ellis (please see docket item [18], first full paragraph).

2) On October 1, 2004, The defendant "admits" by means of a verified, Rule 36 discovery request that Nancy Goss was terminated (see "Attachment B").

3) On October 2, 2004, the HR Manager, Carol Kagenski visits Nancy Goss at her residence to receive alleged evidence from Nancy Goss against the Plaintiff and Lisa

Ellis, both of whom would happen to be the two people she would deem responsible for the termination of her employment on the preceding day (see "Attachment C").

4) October 4, 2004 – October 14, 2004, An "Investigation" is initiated based upon the allegations of Nancy Goss against the Plaintiff, and within the next 2 weeks, forty-two, "inhouse", "legal" communications occur, of which twenty-eight (28) included communications with **Carol Kagenski** (see "Attachment A", please note items identified with boxed numbers).

5) On October 14, 2004, the Plaintiff is terminated by means of a telephone call by **Carol Kagenski** stating he was terminated for violations of the Electronic Communications Policy with absolutely not one word of communication with the Plaintiff in regards to the any of the matters whatsoever.

6) On October 18, 2004, having not had opportunity to be heard in anyway shape or form, the Plaintiff sends and email to the Plant Manager, Dante Benincasa, Immediate Supervisor, Mitzi Link, and HR Manager, **Carol Kagenski**, pleading to be heard.

7) On October 19, 2004, The Defendant sends a response to the Plaintiffs email expressly "... *your termination has no relationship to any conversations you may have had with our local HR Manager*". Significantly, **Carol Kagenski** whom had retrieved alleged evidence from Nancy Goss at her residence, and involved in twenty-seven, of the forty-two "Privileged" communications the immediate week prior, was CC'd as a confirmation as to the veracity of the correspondence (see "Attachment D").

As is evident by the aforementioned events, the high volume of legal communication also included a conspiracy to commit fraud in an effort conceal the true source of the Defendant's "evidence".

**SAMPLE #2**

1) June 8, 2005, The EEOC Issues notification to the Plaintiff that the Charge will be forwarded to the Respondent (see "Attachment E").

2) June 13, 2005 – June 30, 2005, eleven (11) entries are evident in the Defendant's Privilege Log, inclusive of one undated entry identified as *"Draft of Position Statement to the EEOC with comments and revisions handwritten."* (see "Attachment A", please note items identified triangulated numbers)

3) Defendant's "Position Statement" to the EEOC on July 6, 2005, page 5, section "A.", second paragraph, where it states: *"... upon investigation it was determined that neither Ms. Goss nor Ms. Ellis violated the electronic communications policy."* (see "Attachment F")

4) Defendant's "Written Warning" to Lisa Ellis on October 27, 2004, Titled ***"Violation of NPPC Electronic Communications Acceptable Use Policy"***, first paragraph, first sentence states: *"As a result of our investigation and discussion with you, we have concluded that you violated the NPPC Electronic Communications Acceptable use Policy..."* (see "Attachment G").

**The completely contradictory and therefore blatantly fraudulent statement(s) made within the Defendant's Position Statement to the EEOC, clearly indicates just one of the multitude of fraudulent acts made by the Defendant to the EEOC, and is plainly an act orchestrated with the Defendants Attorneys/Legal Counsel under claim of privileged communications. As such, the Defendant has committed an act of fraud against an agency of the United States of America and a blatantly unlawful act against its former employee (the Plaintiff).**

## SUMMARY ( **A.** -- ARGUMENT FOR MOTION FOR EVIDENTIARY RULING, AND SUBSEQUENT ORDER OF DISCLOSURE)

The Plaintiff does not seek those "privileged" communications/documents which have been communicated or in the preparation of this pending litigation, as he has no interest whatsoever in their communications. However the documents/communications which represent the associated, internal investigation(s) of the Plaintiff immediately preceding his termination, and those communications/documents which were utilized in the preparation of the Defendant's "Position Statement" are at thee very heart of this case by both the Plaintiff Claims and the Defendant's Defense(s), which the Defendant seeks protection from disclosure. Additionally, the Defendant's motive for nondisclosure have clearly been demonstrated to be inclusive of a conspiracy with legal counsel to commit fraud upon these United States, its Civil Rights Laws and institutions designed to uphold those Rights.

For no less than the aforementioned reasons, I, Kevin H. McKenna respectfully request this Honorable Court Rule on the (il)legality of the Defendant's withholding of critical evidence under the claim privilege, and subsequently Order the Defendant to disclose all documents to the Plaintiff which are presently identifiable within, but not limited to the Defendant's Privilege Log, at present or in the future.

## (**B**) -- ARGUMENT FOR, MOTION FOR A COURT ORDER COMPELLING DISCLOSURE AS JUST SANCTION(S) FOR MULTIPLE DISCOVERY RULE VIOLATIONS.

Should this Court deem the previous arguments within the preceding Section "A." insufficient on their own, to issue a Court Order that the Defendant disclose all documents and/or communications previously withheld under claim of privilege, the Plaintiff, only then respectfully requests the Court consider the arguments within this subsequent, Section "B".

## Failure to Expressly Claim Privileged Documents in Rule 34 Requests for Production

Rule 26(b)(5) of the Federal Rules of Civil Procedure states:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

The Rule is clear, it says:

1) "When" (not at some time after, not at a later time convenient to the producing party, not that the party shall "seasonably supplement", it says "When", at that time)

2) "... the party shall make the claim *expressly*"

3) "... shall *describe the nature* of the documents, communications, or things"

4) "... in a manner that... *will enable other parties to assess the applicability of the privilege or protection*."

Items 2, 3 and 4 above, cannot be satisfied with a "boiler plate" claim (see "Attachment H") for Rule 34 request for production. While this sort of a response may suffice within "General Objections", it is in no way supported by Rule 26(b)(5) when responding to the specific discovery requests. The mere fact that the Defendant has now, several months later produced a "Privilege Log", is both A) an express self-admission by the Defendant that previously stated claims was inadequate. B) by means of the May 17, 2006 Court Order that the Defendant produce a "Privilege Log" is an express acknowledgement by this Court, that the Court deems

the Defendants previous "boiler plate" claims of privilege to be inadequate, and well supported by the Federal Circuit.[2]

**Inadequate Document/Communication Identification with Defendant's "Privilege Log"**

The Defendant's Privilege Log is deficient in it's intended purpose for no less than the following reasons:

1) Local Rule 26.1(b) states:

 a. "Any privilege log shall *cross reference* the specific request to which *each assertion* of privilege pertains".

 b. "A privilege log shall list documents withheld in *chronological order*..."

2) Inadequate identification of the parties involved in the communications, "legal counsel" and/or "attorney", are woefully inadequate identification when the party represented is a Corporation, with inhouse legal personnel, for an infinite variety purpose(s). (Example: an inhouse "***Contract Attorney***" as a party to a communication in regards to *employment law* does not qualify that communication as "privileged" (see "Attachment F", last page (7), Closing ).

3) FRCP Rule 26(b)(5) states: "... *the party shall make the claim expressly*", yet within the Defendant's Privilege Log it is impossible to determine which claim is being asserted with each claim.

4) FRCP Rule 26(b)(5) states: "... *shall describe the nature of the documents, communications, or things*", yet there is nothing within the Defendant's

---

[2] *Burlington Northern & Santa Fe Railway Company v. United States District Court for the District of Montana*, 2005 WL 730193 (9th Cir. 2005) ("*boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert privilege.*"

>Privilege Log that indicates the nature of the communications in any way shape or form.

As such, the Defendant's Privilege Log fails to meets its obligations and accomplishes little more than a "boiler plate" assertion of privilege. The Defendant's Privilege Log in fact appears to support suspicion that the true (unlawful) nature of the communications is attempting to be shielded from discovery/disclosure by insubstantiative claim of privilege.

### **Failure to List All Undisclosed Communications/Documents Within the Defendant's Privilege Log.**

The Defendant's production of it's Privilege Log was not comprehensive to all complaint/investigation communications/documents withheld from discovery/disclosure. Had it not been for the Freedom of Information Act, and as such, documents disclosed by the EEOC within the EEOC's investigative file, the incomprehensive composition of the Defendant's Privilege Log would never have been known or revealed. There is a minimum of 2 undisclosed communications/documents which the Defendant had been expressly informed, by an informal email (see "Attachment 1"), which were not disclosed, significantly the Defendant ignored the correspondence. Also significant is that the Defendant had expressly represented to the Plaintiff within an informal email correspondence, that not only was the Defendant's Privilege Log complete, pursuant to the May 17, 2006 Court Order, but that the Privilege Log was totally comprehensive to all privileged documents being withheld under claim of privilege.

### **Failure to Comply With Order**

Court Order, dated May 17, 2006, docket item #31, states among other things, *"Defendant will produce, within ten days, a privilege log concerning documents being withheld from the investigative file concerning plaintiff's internal complaint about sexual harassment".*

Page 10 of 15

Rule 37 of the Federal Rules of Civil Procedure clearly establishes the spirit and intent of discovery by articulating the inappropriate disclosure(s)/response(s) and/or failures to cooperate in the discovery process. Rule 37(a)(3) states very well, in that, "...*an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond*". Additionally Rule 37(c) represents failure to cooperate in the discovery process as, "*Failure to Disclose; False or Misleading Disclosure*".

Using the two contexts cited above, within Rule 37 of the Federal Rules of Civil Procedure as a reference, and given the woeful inadequacies of the Defendant's Privilege Log as has been previously outlined within this memorandum, the Defendant's Privilege Log in response to the May 17, 2006 Court Order clearly constitutes "Failure to Respond", and therefore constitutes "Failure to Comply With Order".

## SUMMARY (B – ARGUMENT FOR, MOTION FOR A COURT ORDER COMPELLING DISCLOSURE AS JUST SANCTION(S) FOR MULTIPLE DISCOVERY RULE VIOLATIONS)

The Defendant has failed to meet its obligations in regards to withholding documents and/or communications from discovery/disclosure under claim of privilege in almost innumerable ways. The Plaintiff has in a genuine and good faith effort attempted to compel a more meaningful response from the Defendant, only to have his efforts denied and/or simply ignored. As such, it is the Plaintiff's belief that the Defendant as effectively waived any claim to privilege to any and/or all documents/communications, relevant to the three individuals Nancy J. Goss, Lisa Ellis, and Kevin H. McKenna (Plaintiff) which had been transacted prior to the filing of this case, with this Court. Therefore, I Kevin H. McKenna, Plaintiff, respectfully request this Court order, that the Defendant Nestle Purina PetCare Co. permit complete and unimpeded

access and inspection for copying of all documents and/or communications without exception, relevant to Nancy J. Goss, Lisa Ellis, and Kevin H. McKenna, at a place and time agreeable to all parties and this Court.

## CLOSING

The Plaintiff has brought two separate Motions to this Court seeking an Order that the Defendant disclose documents/communications which are at the absolute essence of this case. The genuine pursuit of justice in this case can only be served by an absolute and unimpeded, intense scrutiny of the Defendant's actions taken against the Plaintiff. To do otherwise will unquestionably and irreparably prejudice this case against the Plaintiff.

If the Defendant's acts are/were as pure and pristine as they attempt to represent them to be, and the Plaintiff's acts as egregious as they so animatedly attempt to represent them to be, then the Defendant should want nothing more than each and every document/communication in support of their acts and against the Plaintiff to be known. This is simply an axiom of Truth, Honor and Justice. The Plaintiff has nothing to hide, let the Defendant come forward and make an equivalent statement and either waive their right to respond to these two motions, or step forward on their own, absent an Order from this Court and make full disclosure.

Either or both, separately or combined, the separate Motions and supporting arguments set forth within this memorandum, clearly set legal grounds that the documents withheld under claim of privilege now be disclosed, and may now finally be able to set this discovery process in a direction where it is meant to be, the pursuit of "Truth".

Respectfully Submitted,

*[signature]*

Kevin H. McKenna, Plaintiff (Pro Se)
kmckenn@columbus.rr.com
4885 Adamsville Road
Zanesville, Ohio  43701
(740)452-3124

## **CERTIFICATION**

As required by Rule 37(a)(2)(A) of the Federal Rules of Civil Procedure, I, Kevin H. McKenna, Plaintiff Pro-Se (Case No. C2-05-976), by no less than the actions described within the "Memorandum in Support", hereby certify that I have, in good faith and to the best of my ability, conferred or attempted to confer with the Defendant / Defendant's Counsel for Nestle Purina PetCare Co., in an effort to secure proper identification of items not disclosed under Rule 34 request for production, withheld under claim of Attorney/Client Privilege and/or the Work Product Doctrine, without court action. (Please see "Certification Supplement" accompanying this memorandum, of which this Certification is a part of)

_____ 6/12/06
Kevin H. McKenna          Date
(Plaintiff, *Pro Se*, Case No. C2-05-976)
4885 Adamsville Road
Zanesville, Ohio 43701
(740)452-3124

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served, via hand delivery to the address below, on Monday, June 12, 2006, to the address(es) within the following:

Keith W. Schneider (#0041616)
kwschneider@ms-lawfirm.com
Jonathan R. Secrest (#0075445)
jsecrest@ms-lawfirm.com
250 Civic Center Drive, Suite 200
Columbus, Ohio 43215

Kevin H. McKenna, Plaintiff (Pro Se)
kmckenn@columbus.rr.com
4885 Adamsville Road
Zanesville, Ohio 43701
(740)452-3124