**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

FILED
JAMES BONINI
CLERK

06 JUL 10 PM 4: 12

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | | |
|---|---|---|
| **KEVIN H. MCKENNA** | : | |
| | : | **CASE NO. C2 05 976** |
| *Plaintiff,* | : | |
| | : | |
| vs. | : | **JUDGE MARBLEY** |
| | : | |
| **NESTLE PURINA PETCARE CO.** | : | |
| | : | **MAGISTRATE JUDGE KEMP** |
| *Defendant.* | : | |

**PLAINTIFF'S *REPLY MEMORANDUM* SUPPORTING COURT IMPOSED
SANCTIONS AGAINST THE DEFENDANT, NESTLE PURINA PETCARE CO. FOR
FAILURE TO COOPERATE IN DISCOVERY AND FAILURE TO COMPLY WITH A
COURT ORDER**

**Factual Background**

The following statement(s) of fact are well established, incontestable and agreed upon by

both parties: (see "Attachment A")

1. On Friday, October 8, 2004, the Plaintiff was placed on "Administrative Leave" (IE –

   "Suspended") pending "further investigation".

2. On Thursday, October 14, 2004, the Plaintiff's employment with the Defendant was

   terminated.

While the following statement is not as well established as the two (2) prior statements

above, commonsense, the Defendant's own evidence/exhibits in its statements to the EEOC

soundly establishes that the Defendant initiated it's investigation and "inspected" the Plaintiff's

"Outlook" on the Monday immediately following the Plaintiff's "suspension", being October 11,

2004. (see "Attachment B", email items #2, #3 and #4, bottom left of page)

Within the Defendant's "Position Statement" to the EEOC on July 6, 2005, and as substantiated by the EEOC's own findings on August 3, 2005 (see "Attachment C"), it is alleged that the Plaintiff's employment with the Defendant was terminated due to seven (7) emails that were allegedly found due to an "inspection" of the Plaintiff's *Outlook "inbox" and "sent items" folder*". Significantly, these emails that the Defendant allegedly found within the Plaintiff's Outlook are dated as follows: (See "Attachment B")

Item #1.    September 29, 2004 - (**12** days prior to October 11, 2004)

Item #2.    February 18, 2003 - (**601** days prior to October 11, 2004)

Item #3.    July 17, 2003 - (**452** days prior to October 11, 2004)

Item #4.    August 1, 2003 - (**437** days prior to October 11, 2004)

Item #5.    January 16, 2004 - (**269** days prior to October 11, 2004)

Item #6.    March 15, 2004 - (**210** days prior to October 11, 2004)

Item #7.    September 30, 2004 - (**11** days prior to October 11, 2004)

On May 26, 2006, (per a Court Order dated May 17, 2006) the Defendant provided a written response in regards to the Plaintiff's "complete Outlook" (see "Attachment D"). Very Significantly, within the aforementioned, "written response" the Defendant stated (under oath, IE - "*certified*") on page 3: "*... his Complete Outlook file cannot be produced as even prior to his termination **emails older than seven (7) days were being erased from the system** as they were overwritten with the current days backups.*" ("***emphasis***" added). As can easily be seen, blatant fraud has committed by the Defendant, in either the emails the Defendant alleges that were "found" within the Plaintiff's Outlook on October 11, 2004, or under Oath, stating that emails older than "*seven (7) days were being erased*". On July 3, 2006, the Defendant further

substantiates the veracity of this sworn statement, under oath, within the Defendants opposing memorandum to this Motion and in representation to this Court, (end of page 1, and spanning to the beginning of page 2) where the Defendants states: "*Larry Swift, who swore under oath the response was true and accurate.*"

As can easily be seen, the Defendant's own certified, sworn statements, under oath, are in absolute and fraudulent contradiction to the Defendant's own evidence/exhibits it alleged and/or represented to the EEOC as the Defendant's reason(s) for the termination of the Plaintiff's employment.

### The Defendant Must be Held Accountable for it's Statement(s)

Whether this Court sanctions the Defendant for making blatantly fraudulent sworn statements, under oath, as requested within the initiating motion under Rule 37(b)(2)(B) of the Federal Rules of Civil Procedure by "… *prohibiting that party from introducing designated matters in evidence;*" or simply mandates by Court Order that the Defendant be governed by its own sworn statements, under oath, that this Court will not recognize any evidence presented by the Defendant, from the Plaintiff's Outlook, "… *emails older than seven (7) days…*" (IE – any emails from the Plaintiff's Outlook dated prior to October 4, 2004, due to the Defendant's own verified, sworn statement(s), under oath, that such email(s) from the Plaintiff's "complete Outlook" cannot exist), the Defendant must be held accountable for either its fraudulent statement(s) /acts, or the Defendant's verified/sworn statements, under oath.

### CLOSING:

The Defendant must be held accountable for its statements and/or acts. For no less than the reason(s) set forth within the initiating Motion, and supporting memoranda, the Plaintiff

respectfully requests this Court, either by means of sanction under rule 37(b)(2)(B) or simple

evidentiary ruling governed by the Defendant's own sworn statements, the Defendant not be

allowed to introduce any alleged "evidence" from the Plaintiff's "Outlook" (company emails)

dated prior to October 4, 2004.

  The Plaintiff also respectfully requests that this Court take any other actions against the

Defendant, it may deem appropriate in regards to the matters set forth within this instant Motion

and respective memoranda.

Respectfully Submitted,

Kevin H. McKenna, Plaintiff  (Pro Se)
kmckenn@columbus.rr.com
4885 Adamsville Road
Zanesville, Ohio   43701
(740)452-3124

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served, via hand delivery to the address below, on Monday, July 10, 2006, to the address(s) within the following:

Keith W. Schneider (#0041616)
kwschneider@ms-lawfirm.com
Jonathan R. Secrest (#0075445)
jsecrest@ms-lawfirm.com
250 Civic Center Drive, Suite 200
Columbus, Ohio 43215

Kevin H. McKenna, Plaintiff  (Pro Se)
kmckenn@columbus.rr.com
4885 Adamsville Road
Zanesville, Ohio   43701
(740)452-3124

# Attachment A

**Kevin H. McKenna vs. Nestle Purina PetCare Company**     Page 3 of 4
**Statement of Claim**
- **Timeline and Supporting Evidence / Exhibits** -

- **October 1st, 2004** – Ms. Goss was terminated for being an "overt threat", for harassing and threatening her co-worker(s).

- **October 4th, 2004** – In direct conflict with the company's "Non-Harassment and Non-Retaliation Policy" [11] (and federal law(s)), Ms. Kagenski *explicitly* condoned, (if not actually solicited) retaliatory actions against me from my harasser, Ms. Goss [12].

- **October 8th, 2004** – I am placed on "Administrative Leave", citing "Inappropriate Emails" on my behalf.

- **October 14th, 2004** – Without any consultation or conversation in any way, my employment is terminated by telephone citing violation of the companies "Electronic Communications Policy" [13].

- **October 18th, 2004** – I compose an email to the defendant, pleading for reconsideration [14].

- **October 19th, 2004** – I receive an official response from Ms. Link to my email by conventional mail, citing that I was explicitly terminated for violations of the Electronic Communications Policy, and that my termination "…has no relationship to any prior conversations you may have had with our local HR Manager" [15].

- **April 4th, 2005** – I file a very belabored, very poorly drafted complaint, by myself and for myself, with the Ohio Civil Rights Commission [16].

- **April 11th, 2005** – I receive notification from the OCRC that they have forwarded the complaint to the Equal Employment Opportunity Commission [17].

- **June 8th, 2005** – I receive notification from the EEOC that the charges have been forwarded to Nestle Purina PetCare Company [18].

- **August 3rd, 2005** – I receive notification from the EEOC that they have dismissed the charges [19]. (NOTE: Other than "notifications" noted in this timeline, by means of conventional mail from both the OCRC and the EEOC, I have had no interaction or communication of any sort from the OCRC nor EEOC. There is no attempt whatsoever to gain any information on my behalf by either organization since the original belabored intake of the charges on April 4th with the OCRC). I immediately requested the EEOC file information (per the FOIA).

- **August 4th, 2005 through late September 2005** – I make several appeals to the dismissal of my case/charges to both the Cleveland and Washington D.C. offices of the EEOC.

- **August 22nd, 2005** – I send an email [20] request to the corporate headquarters of Nestle Purina PetCare, to Gary DeWit the "Director, Human Resources, Product Supply – North America", asking/suggesting that they conduct a comprehensive internal investigation into the matter.

- **August 24th, 2005** – I receive an overnight mail response [21] from Mr. DeWit, stating that the matter was reviewed carefully and that it is "… my perspective and that of the entire organization, we consider this issue to be resolved and closed.".

- **September 3rd, 2005** – I receive the EEOC file information and I examine the Respondents "Position Statement" [22]. I found the Respondents "Position Statement" to be wholly contemptuous, laced with insubstantial allegations, over dramatized, and blatantly false statements. Further more, the Respondents "Position Statement" directly contradicts the official correspondence forwarded to me on October 19th, 2004, in that it exhaustively relates the termination of my employment to "… conversations with our local HR Manager…", and further states that the termination took into account alleged "harassment" policy violations.

- **September 12th, 2005** – I send an email to Daniel Cabot from the Cleveland office of the EEOC, rebutting the contemptuous Position Statement [23].

- **September 14th – 30th, 2005** – I receive several notifications from the Cleveland office of the EEOC in response to my numerous appeals, staying the original dismissal.

5.    Nestle admits that on or about September 28, 2004, Ms. Ellis provided it a copy of a letter sent to Ms. Ellis by Ms. Goss.

6.    Nestle admits it terminated Ms. Goss as alleged in Plaintiff's Amended Complaint.

7.    Nestle admits Plaintiff was placed on administrative leave and then terminated on October 14, 2004.

8.    Nestle admits that on or about October 18, 2004, it received an email from Plaintiff pleading for reconsideration.

9.    Nestle admits that on or about October 19, 2004, it informed Plaintiff, via written letter, that he was terminated.

10.    Nestle admits that on our about April 4, 2005, Plaintiff filed a very poorly drafted Complaint with the Ohio Civil Rights Commission as alleged in Plaintiff's Amended Complaint.

11.    Nestle admits that on or about August 3, 2005, the Ohio Civil Rights Commission dismissed Plaintiff's Complaint.

12.    Nestle admits that on or about August 22, 2005, Plaintiff sent an email to Gary DeWit, Director of Human Resources, regarding this matter.

13.    Nestle admits that it sent Plaintiff a response to the email stating the matter was carefully reviewed and Nestle considered it closed.

## SECOND DEFENSE

14.    Nestle denies each and every allegation set forth in Plaintiff's Amended Complaint not expressly admitted herein.

2

# Attachment B

**McKenna,Kevin,ZANESVILLE,NPPC**

| | |
|---|---|
| **From:** | McKenna,Kevin,ZANESVILLE,NPPC |
| **Sent:** | Wednesday, September 29, 2004 12:48 PM |
| **To:** | 'mckennaz@columbus.rr.com' |
| **Subject:** | pics |

**Attachments:** 1.jpg; 2.jpg; 3.jpg; 5.jpg; 4.jpg; 6.jpg; 7.jpg

        

1.jpg (15 KB)  2.jpg (16 KB)  3.jpg (14 KB)  5.jpg (11 KB)  4.jpg (11 KB)  6.jpg (15 KB)  7.jpg (11 KB)

Alleged email #1
(12 days old @ 10/11/2004)

1

## McKenna,Kevin,ZANESVILLE,NPPC

| | |
|---|---|
| **From:** | McKenna,Kevin,ZANESVILLE,NPPC |
| **Sent:** | Tuesday, February 18, 2003 1:04 PM |
| **To:** | 'mckennaz@columbus.rr.com' |
| **Subject:** | Your Hubby |
| **Importance:** | High |

OK Linda, its time... I NEED *YOUR* help... my love, my life time friend, mate... please.

In my opinion, I am "out of control"

We both know the WOES of a possessive relationship, and it had a deep impact on US. In an attempt to make sure we never experince another impact like that, we both re-established our relationship. I KNOW you've been (as you usually are) very tough on yourself over that.

I think on our rebound AFTER that issue,... I think we've gone to far to the other way. Like many other things in my life (as you are well aware happens often), I've gone overboard the OTHER WAY. Out of your love and regret for me, and things that have happened in the past, you've turned a blind side to it all. For a time, its what I needed, its what WE needed. Well like other things I have obsessed with, I can at least see it or recognise when I'm in too deep (that stupid ass GAME I FILLNALLY gave up, etc etc etc).

HOWEVER, I need YOUR help with breaking my ADDICTION with "going out", and all that directly or indirectly relates to that. I *KNOW* you want me to be happy, you are willing, despite how much it may hurt you, to "allow" me to do the things I want (because all the things mentioned above). Well, it's that time where that "allowance" is feeding the problem, like giving the addict drugs, or taking the drunk to the bar. Out of LOVE or us, for me, I ask you to help me control this PROBLEM (as I call it) that I feel I have.

I am going to DROP this "addiction", but I CANT do it alone. You MUST stop being supportive of this BAD HABIT in order to help me. No, you don't have to do it like a battle-axe, but out of love and compassion for someone that is ASKING for your help.

I've been agonizing over letting this go for quite some time, (this is NOT an impulsive decision).. and I have here and now made that decision / commitment.

This was all typed on the fly, no preplanning, so if it loks like jibberish, it probably is.. and of course I'm sure we'll be talking about it, and hopefully everything will appear clear.

Again Linda, make sure you see this in the right way.. I'm *ASKING* (begging) you for your *HELP*.

Love Kevin

Alleged email #2
(601 days old @ 10/11/2004)

10/11/2004

## McKenna,Kevin,ZANESVILLE,NPPC

**From:** McKenna,Kevin,ZANESVILLE,NPPC
**Sent:** Thursday, July 17, 2003 6:46 AM
**To:** Lanning,Mary,ZANESVILLE,Materials Purchasing

**Tracking:** **Recipient**                                   **Read**

Lanning,Mary,ZANESVILLE,Materials Purchasing   Read: 7/17/2003 7:25 AM

Hi Mary :-)

Ideally I'd like to have done this yesterday, and had the nerve to do it face to face.... BUT we both see how well that worked out. Maybe this will work out better for me being a bit SHY (blush/grin)

I just wanted to very sincerely and gentlmanly compliment you on how well you looked yesterday. Can't put my finger on exactly what it was, I can only tell you, overall you seemed unusually (loss of words) radiant?

My Compliments...

*Alleged email #3*
*(452 days dd @ 10/11/2004)*

10/11/2004

**McKenna,Kevin,ZANESVILLE,NPPC**

| | |
|---|---|
| **From:** | McKenna,Kevin,ZANESVILLE,NPPC |
| **Sent:** | Friday, August 01, 2003 1:33 PM |
| **To:** | 'Tammy Sparks' |
| **Subject:** | RE: Hotmail |

you'll be able to feel yourself contracting all over your hand, how wet, excited you are/get, how your cunt gushes from being HF'd.. MMm..

-----Original Message-----
**From:** Tammy Sparks [mailto:lovemygt@hotmail.com]
**Sent:** Friday, August 01, 2003 2:17 PM
**To:** McKenna,Kevin,ZANESVILLE,NPPC
**Subject:** Re: Hotmail

me too... I will let you know if it appears that I can or not...

----- Original Message -----
**From:** kmckenna@purina.com
**To:** lovemygt@hotmail.com
**Sent:** Friday, August 01, 2003 14:18
**Subject:** RE: Hotmail

a relatively short time would prolly be best 4 me.. not planning on a 'night out' sort of thing.. even tho, it could happen if need be or be best...

-----Original Message-----
**From:** Tammy Sparks [mailto:lovemygt@hotmail.com]
**Sent:** Friday, August 01, 2003 2:10 PM
**To:** McKenna,Kevin,ZANESVILLE,NPPC
**Subject:** Re: Hotmail

50-50 chances

----- Original Message -----
**From:** kmckenna@purina.com
**To:** lovemygt@hotmail.com
**Sent:** Friday, August 01, 2003 13:58
**Subject:** Hotmail

JUST got cutoff.. "VERY SERIOUS VIRUS THREAT"

so, what odds do you give being able to stop by post 9?

*Alleged email #4*
*(437 days old @10/11/2004)*

10/11/2004

**Link,Mitzi,ZANESVILLE,NPPC**

| | |
|---|---|
| **From:** | McKenna,Kevin,ZANESVILLE,NPPC |
| **Sent:** | Friday, January 16, 2004 11:22 AM |
| **To:** | Link,Mitzi,ZANESVILLE,NPPC |
| **Subject:** | One more "Comment" |

Hey Mitz...

Falls into the same category of the comments of the PEP, its difficult to know of yourself without an honest, objective opinion....

Your "Look" today compliments you exceptionally well, colors, fit, build... everything... very nice!

Another deserving compliment...

Me being one of those GUY things.. you "turned" this ones head..

PS - Apologies if this is too UN-professional in a work place setting, it may not be appropriate given our working relationship, but its only intended as a sincere compliment to you as a person.

Alleged email #5
(269 days old @ 10/11/2004)

1

**McKenna,Kevin,ZANESVILL .PPC**

| | |
|---|---|
| From: | McKenna,Kevin,ZANESVILLE,NPPC |
| Sent: | Monday, March 15, 2004 10:09 AM |
| To: | Goss,Nancy,ZANESVILLE,Administration |
| Subject: | RE: |

Guess that means we'll have to C if we can warm one up, C how hot u like them.

-----Original Message-----

| | |
|---|---|
| From: | **Goss,Nancy,ZANESVILLE,Administration** |
| Sent: | **Monday, March 15, 2004 11:02 AM** |
| To: | McKenna,Kevin,ZANESVILLE,NPPC |
| Subject: | RE: |

MMMMMMMMMMMMMMMMMMMMMMMMMMmmmmmmmmmmmmmmmmmmmmmmmmmmmmmm I think I'd like them REALLY, ***SMOKIN*** ***HOT***! Did I ever tell you that I like to s**k my "B"rownies SLOWLY?

-----Original Message-----

| | |
|---|---|
| From: | McKenna,Kevin,ZANESVILLE,NPPC |
| Sent: | Monday, March 15, 2004 11:00 AM |
| To: | Goss,Nancy,ZANESVILLE,Administration |
| Subject: | |

Wonder if "warm"/"HOT" "B"rownies are any good.......

*Alleged email #6*
*(210 days old @ 10/11/2004)*

1

**McKenna,Kevin,ZANESVILLE,, ..'PC**

| | |
|---|---|
| **From:** | McKenna,Kevin,ZANESVILLE,NPPC |
| **Sent:** | Thursday, September 30, 2004 7:25 AM |
| **To:** | 'Kevin McKenna' |
| **Subject:** | I want to tell you... |

I'm getting horny thinking about Mona.... And the even better part is, I *LIKE* you
KNOWING that... I LIKE telling you who gets me hot, making you KNOW it.... TURNS ME ON!

Alleged email #7
(11 days old @ 10/11/2004)

1

# Attachment C

Mr. Daniel Cabot
July 6, 2005

*Defendant's "Position Statement" to Daniel Cabot of the EEOC*

Page 4

In the course of investigating Ms. Goss's conduct, Ms. Kagenski ultimately concluded that Ms. Goss had violated several Company policies, and Ms. Goss's employment was terminated.  However, the conduct of Mr. McKenna, which now became known, also had to be investigated.  Mr. McKenna was placed on suspension pending investigation into his use of the Company computers, email and Internet.  HR inspected Mr. McKenna's Outlook "inbox" and "sent items" folder and found the following:

#1 • an email message containing 4 pornographic pictures of a male and a female in sexual positions, sent out from Nestlé email;

#2 • an email from Kevin McKenna to his wife regarding his addiction to dating other women;

#3 • an email from Kevin McKenna to Nestlé employee Mary Lanning telling her she "looks radiant";

#4 • an email from Kevin McKenna to "Tammy Sparks" asking for a date and containing explicit sexual language;

#5 • an email from Kevin McKenna to his supervisor, Mitzi Link, commenting on her "look" and saying that she "turned" his head;

#6 • an email string between Kevin McKenna and Nancy Goss containing sexual innuendo;

#7 • a sexually explicit email from Kevin McKenna to himself about "what gets me hot".

Exhibit D (Emails printed from K. McKenna Outlook).

These emails were found to violate the Company's Electronic Communications Policy which requires that all use of the Company computer, internet access and email be in a manner consistent with the law and Company policy and expressly prohibits "accessing, sending, forwarding, downloading, printing, or deliberate receipt of pornographic, obscene, indecent or other sexually explicit materials . . ." Exhibit E (Nestlé Purina Pet Care Information Security Standards, pp 3-4).  Further, some of the content violated the Company policy against sexual harassment.  Exhibit F (Notice of Non-Harassment Policy and Non-Retaliation Policy).

On October 14, 2004, Kevin McKenna was fired for multiple violations of the Electronic Communications Policy and the policy against harassment.  The decision also took into account that Mr. McKenna had previously been disciplined for violating the policy against harassment.  Exhibit G (Oral & Written Warning).

The investigation also resulted in a written disciplinary warning and suspension of Ms. Ellis regarding excessive time spent on personal matters while at work.  Exhibit H.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Cleveland District Office**

1660 West Second Street, Suite 850
Cleveland, OH 44113
(216) 522-2001 or 2002
TTY (216) 522-8441
FAX (216) 522-7395

August 3, 2005

Mr. Kevin McKenna
4885 Adamsville Road
Zanesville, Ohio 43701

Dear Mr. McKenna:

We have completed a review of the charge of employment discrimination (22A-2005-02413/Nestle Purina Petcare Company) you filed with us. Our review included an assessment of all the information offered by you and the respondent.

As a result of our review of the matter we have made a decision once again to dismiss the charge. Based on our review of the available evidence, we do not believe it can be established that the respondent has discriminated against you as alleged. Nothing in the evidence suggests that you had been discriminated against by the Respondent because of your sex, male, or for having engaged in prior protected activity. As the file reflects you were terminated for the following reasons:

1. Sending an e-mail message containing four pornographic picture using Respondent's e-mail system;

2. Sending an e-mail to your wife regarding your addition to dating other women;

3. Sending an e-mail to a co-worker telling her she looked radiant;

4. Sending an e-mail to another co-worker asking her for a date and using sexually explicit language;

5. Sending an e-mail describing how you were touching yourself in a sexually graphic manner;

6. Sending an e-mail to your Supervisor commenting on her looked and how she turned your head;

7. Sending an e-mail to yourself describing what gets you hot.

These e-mails clearly violated Respondent's policy regarding the downloading of sexually explicit materials. Some of this material also violated Respondent's harassment policy.

The file further reflects that as a result of Respondent's investigation into the relationship

between you and two of your female co-workers, Nancy Goss and Lisa Ellis, that Ms. Goss was terminated for making threatening remarks to Ms. Ellis. Additionally, Ms. Ellis was given a written disciplinary action and suspended for spending excessive time at work on personal matters There are no indications that further investigation will result in sufficient evidence to establish a violation.

The enclosed dismissal notice issued to the parties explains that while we are not certifying that the employer (or respondent) is in compliance with the laws we enforce, our investigation has revealed insufficient evidence to warrant further processing of the charge. The dismissal notice describes your right to pursue the matter by filing a lawsuit in federal court within 90 days of your receipt of the notice.

Should you have any additional questions or concerns, please fee free to contact the Investigator assigned to your case, Janet Wagner t 216/522-2419.

We hope this information is helpful to you.

Sincerely,

Daniel J. Cabot
Enforcement Manager

# Attachment D

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEVIN H. MCKENNA        :

           :       CASE NO. C2 05 976

        *Plaintiff,*         :

           :

vs.            :       JUDGE MARBLEY

           :

NESTLE PURINA PETCARE CO.    :

           :       MAGISTRATE JUDGE KEMP

        *Defendant.*       :

## DEFENDANT NESTLE PURINA PETCARE CO.'S SUPPLEMENTAL RESPONSE TO PLAINTIFF KEVIN MCKENNA'S REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and this Court's may 17, 2005 Order, Defendant Nestle Purina Petcare Co. (hereinafter "Defendant") hereby submits the following supplemental answers and responses to Plaintiff Kevin McKenna's Request for Production of Documents.

### GENERAL OBJECTIONS

1.     Defendant objects to Plaintiff's Discovery Requests to the extent they impose burdens beyond the obligations of discovery as proscribed by the Federal Rules of Civil Procedure and are not reasonably calculated to lead to the discovery of admissible evidence.

2.     Defendant objects to Plaintiff's Discovery Requests so far as they seek information and/or documents not in Defendant's possession and/or control, or information and/or documents solely in Plaintiff's possession.

3.     Defendant objects to Plaintiff's Discovery Requests so far as they seek the disclosure of information which is protected by the attorney/client privilege and the work product doctrine and is otherwise protected from disclosure.

1

4.     Defendant objects to Plaintiff's Discovery Requests to the extent they seek information not readily available to Defendant, but which may become available as discovery in this action progresses.

5.     Defendant expressly reserves all objections as to competency, relevancy, materiality, and admissibility of the answers contained herein and any objections to future discovery requests.

6.     Defendant asserts it is responding to the Discovery Requests to the best of its present knowledge and belief, and expressly reserves the right to supplement the responses contained herein, if necessary, while affirming it has no duty to supplement the answers contained herein, except as provided by Rule.

## REQUEST FOR PRODUCTION OF DOCUMENTS

"Plaintiff's Second Request for Production", Item #2, ("The complete contents of the Plaintiff's, Kevin H. McKenna's Company email / Outlook at the time of employment termination. An "electronic" copy (IE – Compact Disc) of the data, with explicit instructions on how to access the data would be preferred and acceptable.").

**Response:**

Defendant attempted to comply with this request and submitted electronic discs to Plaintiff containing information saved from his computer on the day he was terminated, which is exactly what is requested in this Discovery Request.  These discs, however, did not contain Plaintiff's complete Outlook for the duration of his employment with Defendant, which later became clear Plaintiff was seeking.

Defendant's electronic mail retention policy in effect at the time Plaintiff was terminated was to backup each employees email daily and rotate it to an off-site storage facility where it was

retained for 7 days. On day 8, the oldest backup was rotated back to the Purina Date Center and was overwritten with the current day's email file backup. As such, Plaintiff's complete Outlook file has long since been overwritten and does not exist. What was on Plaintiff's Outlook at the time he was terminated was preserved and has already been provided to Plaintiff; however, his Complete Outlook file cannot be produced as even prior to his termination emails older than seven (7) days were being erased from the system as they were overwritten with the current day's backups. The only portions that were saved were already provided to Plaintiff on the aforementioned discs.

Respectfully submitted,

**MAGUIRE & SCHNEIDER, LLP**

Keith W. Schneider    (#0041616)
kwschneider@ms-lawfirm.com
Jonathan R. Secrest    (#0075445)
jsecrest@ms-lawfirm.com
Sharlene I. Chance    (#0070999)
schance@ms-lawfirm.com
250 Civic Center Drive, Suite 500
Columbus, Ohio 43215
Telephone: (614) 224-1222
Facsimile: (614) 224-1236
*Attorneys for Defendant*

3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served, via electronic mail and regular U.S. Mail, this 26th day of May 2006, to the following:

Kevin H. McKenna
4885 Adamsville Road
Zanesville, Ohio 43701
*Pro Se* **Plaintiff**

_____
Jonathan R. Secrest (#0075445)

4

## VERIFICATION

I swear that the foregoing response is true and accurate to the best of my knowledge and belief.

_____
Nestle Purina Petcare Company

By: _____

Its: DIRECTOR, SYSTEMS ASSURANCE

State Of _Missouri_ )
_County St. Louis_ ) SS:
City

Before me, a Notary Public, in and for the ~~County~~ City of _St. Louis_, State of _Missouri_, personally appeared *Larry Swift*, an authorized representative of *Nestle Purina Petcare Company*, who after being fully cautioned and sworn, acknowledged that they did sign the foregoing as their free act and deed and did acknowledge that the above Answers are true to the best of their knowledge and belief this _25th_ day of _May_ 2006..

_Maureen L. Elbert_
**Notary Public**

MAUREEN L. ELBERT
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis City
My Commission Expires: May 28, 2006