IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kevin H. McKenna,            :

    Plaintiff,         :

  v.                         :    Case No. 2:05-cv-0976

Nestle Purina PetCare Company, :  JUDGE MARBLEY

    Defendant.         :

OPINION AND ORDER

    Plaintiff, Kevin H. McKenna, filed this action against Nestle Purina PetCare Company, his former employer. He asserts that he was discharged after complaining of sexual harassment by a co-worker. The case is currently before the Court to consider a number of motions which the parties have filed and which relate to procedural matters including the pleadings and the conduct of discovery. The Court will describe each motion below as well as the disposition to be made of that motion. A separate order will issue addressing Mr. McKenna's motion to stay this litigation.

                                            I.

    A brief factual background is helpful to put each of the pending motions into context. According to Mr. McKenna's complaint, he advised the human resources manager at his workplace, Carol Kagenski, on August 31, 2004 that he was being sexually harassed by a co-worker named Nancy Goss. He alleges that he informed his immediate supervisor, Mitzi Link, of the same information on September 17, 2004, and that he advised both Ms. Kagenski and Ms. Link that he feared for his safety and the safety of his co-workers based upon Ms. Goss's conduct. Ms. Goss's employment was terminated shortly thereafter.

    Apparently as a result of investigating Ms. Goss's conduct,

Nestle began an investigation of the conduct of two other employees, Mr. McKenna and Lisa Ellis. On October 14, 2004, Mr. McKenna's employment was terminated because, according to Nestle, he violated its electronic communications policy based upon the content of certain e-mails which he had sent. Ms. Ellis was also disciplined, but she was suspended rather than discharged. Mr. McKenna claims in his complaint that the reasons given for his discharge were pretextual and that the real reason Nestle discharged him was in retaliation for his having complained about sexual harassment in the workplace. He seeks relief in this Court under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e-5 *et seq.*

## II.

Before turning to a discussion of each of the pending motions, the Court notes that the undersigned Magistrate Judge has held numerous conferences with Mr. McKenna and counsel for Nestle. The Court had concluded, as a result of those conferences, that many of the issues raised by the discovery-related motions had been satisfactorily resolved and that the parties were in a position to complete discovery without the need for further guidance from the Court. However, the parties recently advised the Court that rulings are necessary before discovery can be completed. Additionally, all pending discovery has been postponed while the Court considers the merits of the motion to stay. The following rulings will, hopefully, provide the parties with additional and necessary guidance when discovery resumes.

## III.

The Court turns first to document #19, which is a motion filed by Mr. McKenna to strike document #18. Document #18 was a memorandum filed by Nestle in response to one of Mr. McKenna's previous motions. According to Mr. McKenna, #18 was filed after

the Court-established deadline for filing the document (albeit only one day after) and contains a number of false statements concerning the facts surrounding Ms. Goss's suspension and termination as well as other facts relating to the background of this case. In response, Nestle asserts that the one-day delay in filing the document was due to a clerical error and notes that it was served on Mr. McKenna by the due date. In response, Mr. McKenna continues to argue vehemently that the factual portion of the memorandum contains many misstatements and should be stricken for that reason.

The Court accepts Nestle's explanation that the document was filed a day late due to a clerical error. Further, the Court has already ruled on the merits of the motion to which #18 was a response. That ruling did not require the Court to credit those factual statements set forth in #18. The Court notes that the facts of this case will ultimately be determined through either a summary judgment process or through trial, and neither of those processes will be affected by the statements set forth in #18. To the extent that Mr. McKenna asserts that Nestle's attorneys made factual statements in #18 which were unsupported by any evidence, the Court has had the occasion to review other filings in this case and notes that most of the statements set forth in #18 appear to be the version of the events set forth by Nancy Goss. The Court understands that there may ultimately be a substantial controversy over whether Ms. Goss's recitation of these events is true. Nonetheless, it does not appear that Nestle or its counsel acted in bad faith in providing this statement of facts to the Court. For all of those reasons, the Court concludes that the motion to strike is not well-taken and it will be denied.

IV.

The next motion pending is document #23, a motion for

protective order filed by Nestle on April 5, 2006. The Court concludes that this motion was resolved as a result of discussions held at a discovery conference and it will be denied as moot.

V.

The Court turns next to two related motions. On April 14, 2006, Mr. McKenna filed a motion (#25) asking the Court to deem his requests for admissions which were served on March 6, 2006 to be deemed admitted because Nestle had not responded to them. On May 4, 2006, Nestle filed a motion (#28) asking the Court to strike Mr. McKenna's motion. The primary issued raised by these two motions is whether the Court directed Nestle to respond to the requests for admissions within one week of the April 6, 2006 discovery conference. Apparently, Nestle responded to the requests on April 28, 2006.

The Court has reviewed its notes of the April 6, 2006 discovery conference and advises the parties of the following. Nestle was directed to provide Mr. McKenna with information within a week of that conference on two issues. The first was whether it had located any additional documents relating to the prior discipline of Mr. McKenna for alleged sexual harassment. The second was whether Nestle had located additional documents about its human resources process reflecting how Nestle processed Mr. McKenna's sexual harassment charge concerning Ms. Goss. Other matters discussed at the conference, including the question of whether Nestle would be required to respond to all of Mr. McKenna's interrogatories and requests for admissions, were tabled for further discussion between the parties. Thus, until such time as the Court actually entered an order directing Nestle to respond to the requests, or the parties reached an agreement concerning such a response, Nestle's responses were not overdue. Given the fact that Nestle has represented that it responded on

April 28, 2006, and the fact that that date appears consistent with the discussions had at the April 6, 2006 discovery conference, there is no merit to Mr. McKenna's motion. At the same time, however, there is no reason to strike it from the record. Both motions will therefore be denied.

VI.

On June 12, 2006, Mr. McKenna filed a motion (#41) asking for sanctions against Nestle for failure to comply with a Court order and for failure to cooperate in discovery. This motion relates to Nestle's effort to retrieve the contents of Mr. McKenna's e-mail account. Nestle represented on a number of occasions that it had the ability to retrieve the contents of Mr. McKenna's e-mail account only for a seven-day period prior to its search for such e-mails. It apparently provided Mr. McKenna with an affidavit from an individual named Larry Swift that employees' e-mail accounts are overwritten beginning on the eighth day after a message is either sent or received and that no additional e-mails beyond the ones produced by Nestle actually exist.

The issues raised by the motion for sanctions are issues which the Court cannot resolve unless further discovery is conducted. As Nestle notes, Mr. McKenna is free to depose either Mr. Swift or other Nestle individuals, or to ask additional questions to Nestle, concerning its alleged practice of overwriting e-mail accounts on the eighth day after e-mails are generated or received. If additional evidence comes to light indicating that Nestle had such information at the time Mr. McKenna made his request, or at the time that he filed his lawsuit, but intentionally deleted that information or negligently permitted it to be destroyed, an issue concerning spoliation of evidence might arise, and sanctions might be considered. Without any additional information, however, the Court is simply not in a position to make a factual determination

5

as to whether Nestle or Mr. McKenna has the better of this argument.

The Court does note, as Mr. McKenna points out, that when he was discharged, seven specific e-mails were identified as containing communications that violated Nestle's electronic communications policies.  Most of those e-mails were significantly more than seven days old.  One was almost two years old.  It is unclear how Nestle was able to retrieve these e-mails if its policy operated as described in its response to Mr. McKenna's motion.  The Court suggests that Nestle investigate this matter and be prepared, if requested in discovery, to provide a further explanation of how the apparent discrepancy between its ability to retrieve e-mails in October 2004 and its current ability can be explained.  Nevertheless, on the basis of the present record, Mr. McKenna's motion for sanctions will be denied without prejudice to its renewal should additional evidence develop during the course of discovery which would contradict the representations Nestle has made concerning its ability to reconstruct e-mail accounts.

VII.

On June 12, 2006, Mr. McKenna filed a motion (#42) for an evidentiary ruling and to compel the disclosure of documents withheld under claim of privilege.  The responsive and reply memoranda filed in connection with this motion indicate that Nestle did prepare and supply to Mr. McKenna a privilege log indicating that a number of documents were withheld on grounds of attorney-client or work product privilege.  Mr. McKenna claims that many of the documents cannot be shielded by the privilege because Nestle waived any privilege relating to its investigation of his claims of sexual harassment because, in its answer, it raised the defense of adequate investigation as a way to avoid respondeat superior liability for actions taken by non-

supervisory personnel.  Mr. McKenna cites the First Circuit Court of Appeals' decision in United States v. Massachusetts Institute of Technology, 129 F3d. 681 (1st Cir. 1997) in support of his argument that pleading such a defense is a waiver of any otherwise-applicable privilege.

The citation of the Massachusetts Institute of Technology case is inapposite.  That case deals with the waiver of privilege through the voluntary disclosure of privileged communications.  Here, there is no evidence that Nestle has voluntarily disclosed the documents at issue to anyone.  Thus, there has been no waiver of the privilege though disclosure.

However, there is case law suggesting that by pleading the defense of adequate investigation (a defense set forth in detail in two Supreme Court decisions, Burlington Industries v. Ellerth, 524 U.S. 742 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775 (1998)) an employer may waive privileges for documents related to that investigation.  For example, in Walker v. County of Contra Costa, 227 F.R.D. 529 (N.D. Cal. 2005), the court found a waiver where the employer hired an attorney to investigate the plaintiff's claims of discrimination and then used the results of that investigation as a defense to a claim of vicarious liability.  See also Brownell v. Roadway Package System, Inc., 185 F.R.D. 19 (N.D.N.Y. 1999).  These cases make clear, however, that the waiver extends only to documents which constitute evidence of the investigation of the claim of harassment or discrimination.  If an attorney had been consulted about an investigation but did not himself or herself conduct interviews, make disciplinary decisions, or otherwise participate in the investigation itself, the contents of the attorney's advice to the client about the investigative process and the decisions made by the employer remain privileged.  See Waugh v. Pathmark Stores, 191 F.R.D. 427 (D.N.J. 2000).  Nevertheless, as the Court in

7

McGrath v. Nassau County Healthcare Corp., 204 F.R.D. 240, 245 (E.D.N.Y. 2001) noted, "it is inconsistent for [an employer] to invoke the Faragher-Ellerth defense but to retain the documents necessary to evaluate the sufficiency of its response as required by that defense."

    Here, Nestle has asserted (albeit without an affidavit or other evidentiary document to support that assertion) that all the attorney-client privilege documents generated during the time frame during which Mr. McKenna was being investigated constituted advice given by counsel located in Glendale, California to Nestle concerning the proper response to make to Ms. Goss's allegations. Assuming that to be true, and that those attorneys did not personally engage in the investigation, conduct interviews, or make decisions, their advice would be privileged. Further, the Court notes that the only pertinent investigation relating to the Faragher-Ellerth defense would be the investigation conducted concerning Mr. McKenna's claims of harassment by a co-worker, and not Nestle's investigation of the claims by Ms. Goss that Mr. McKenna engaged in some type of objectionable conduct. These documents do not appear to relate to that investigation and, in fact, it does not appear that many, if any, documents were generated concerning Mr. McKenna's complaint. Nestle has also represented that it has located and turned over to Mr. McKenna any documents which made up that investigation. For these reasons, it appears to the Court that Nestle's privilege log was properly compiled and that the documents which Mr. McKenna seeks are, in fact, covered by the attorney-client privilege. Again, however, Mr. McKenna is free to pursue in discovery the question of how, if at all, either the Glendale, California attorneys or other attorneys were involved in an investigation of his claims of harassment and to seek disclosure of any documents which might have been generated by attorneys who acted on Nestle's behalf in

conducting such an investigation, as opposed to simply providing legal advice to Nestle during the course of that investigation. Thus, his motion to compel will be denied.

### VIII.

On June 16, 2006, Mr. McKenna filed a motion requesting the Court to clarify what occurred at the April 6, 2006 discovery conference.  Hopefully, the information provided in response to document #41 accomplishes that task.  As stated, the Court's notes indicate that Nestle was to take certain actions within a week of the conference and the balance of the issues were to be subject to further discussion between Mr. McKenna and counsel. Mr. McKenna is free to raise, if necessary, any additional issues if he believes that Nestle has not fully complied with the Court's directives at the conference.

### IX.

On July 31, 2006, Mr. McKenna filed a motion for leave to amend his complaint.  In it, he asserts that he should be entitled to amend his complaint to assert a claim of sexual harassment dating back to 2002.  Nestle has opposed this motion for a number of reasons, including that Mr. McKenna unduly delayed asserting the claim and that it is beyond the statute of limitations and was never properly presented to the EEOC.  In response, Mr. McKenna has attached information which appears to indicate that this claim may have been part of the charge which he filed with the EEOC.

The Court believes that, given the fact that most of Nestle's opposition to this claim relates to whether or not it may properly be brought, a better exercise of discretion would be to permit Mr. McKenna to amend his complaint to include the claim.  If Nestle believes the claim is then subject to dismissal on jurisdictional or limitations grounds, it may file an appropriate motion and obtain a ruling from the District Judge

assigned to the case.  See, e.g., Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland, 715 F.Supp. 578, 581 (S.D.N.Y. 1989).

X.

On August 7, 2006, Mr. McKenna filed a motion for protective order limiting the scope of discovery.  In it, he complains that Nestle has demonstrated an intent to expand discovery beyond his complaints of harassment against Ms. Goss and his alleged improper use of his e-mail account by delving into personal matters such as whether he has engaged in extramarital affairs, fathered children out of wedlock, and other similar matters. Nestle responded to the motion by asserting that it had not insisted on responses to interrogatories covering those areas (although it did propound such interrogatories) and that Mr. McKenna's motion for a protective order was premature.  However, Mr. McKenna's response indicates that, after Nestle made that statement, it then requested him to answer the questions or face a motion to compel.  Consequently, the Court concludes that the issues raised by the motion are ripe for decision.

Nestle has not directly defended its position concerning these inquiries.  Given the current state of the record, the Court does not believe that inquiries concerning Mr. McKenna's relationship history have anything to do with the single claim of discrimination propounded in this case relating to a very abbreviated time frame between when he first notified Nestle officials that he was being harassed by Ms. Goss and when his employment was terminated, a period of less than two months. Further, they do not relate to the proffered reason for Mr. McKenna's termination, nor would it appear that they are an effort to acquire evidence which, if it had been known to Nestle at the time, would have supported the termination of Mr. McKenna's employment.  It does not appear that Nestle would have

refused to hire, or would have discharged, individuals who either engaged in extramarital affairs or who fathered children out of wedlock. Thus, the current state of the record supports Mr. McKenna's request for a protective order on these subjects. However, should additional claims be made or additional evidence be presented which might make these matters relevant, the Court will revisit the issue upon request.

IX.

Based upon the foregoing, the following motions are denied: #19, 23, 25, 28, 41, 42, and 43. #49 and #51 are granted. Mr. McKenna shall file his amended complaint within twenty days of the date of this order, and that filing deadline will not be affected by his more recent request for a stay.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge