FILED
JAMES BONINI
CLERK

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION          2008 MAY 22  A 9: 39

KEVIN H. MCKENNA          :
                          :          CASE NO. C2 05 976
        *Plaintiff*,      :
                          :
    vs.                   :          **JUDGE MARBLEY**
                          :
NESTLE PURINA PETCARE CO. :
                          :          **MAGISTRATE JUDGE KEMP**
        *Defendant.*      :

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 56 ("DOC #127) - MOTION FOR SUMMARY JUDGMENT

Preface to this Court: The uncorroborated, defamatory allegations, statements and

representations made by Nestle Purina PetCare Co. within it Motion for Summary Judgment

against Kevin H. McKenna to this Court, can be described in no other way than ABSOLUTE

INSANITY. As only a small means to refute only one of the absolutely horrid, false allegations

made by Ms. Goss, and so eagerly (insanely) championed by the Nestle Purina PetCare Co. with

absolute and reckless disregard for McKenna, McKenna is providing three Affidavits[1] to this

Court. 1) Affidavit of Kevin H. McKenna, "McKenna" has known himself all his life, for now

over 50 years. 2) Affidavit of Linda S. McKenna, his wife of 27+ years and intimate

acquaintance of nearly 30 years who has resided with McKenna for every day of their 27+ year

marriage, and 3) Affidavit of Michelle L. McKenna, McKenna's 18+ year old daughter, who has

resided with McKenna all of her 18+ years of life. Combined within these three (3) affidavits,

there are nearly **100 years** of "intimate" knowledge of McKenna's behavior. Nestle and/or Ms.

Goss, attempt to represent to this Court that Ms. Goss's alleged "intimate" knowledge of

McKenna and his behavior during and "alleged" "affair"/relationship trumps any/all other

---

[1] Please see attachment identified as "McKenna Affidavits"

representations, that Nestle and/or Ms. Goss are the ultimate references as to what is, or is not Mr. McKenna.

These three Affidavits are provided to this Court to flatly refute Ms. Goss's delusional allegations of McKenna's mis-conduct, of which Nestle blindly subscribes to, and further champions, literally to the point of insanity. There is absolutely nothing, which exists in any record, anywhere, which could possibly refute the credibility of any one of these three individuals in any manner. While this Court has not yet been provided with a large portion of direct evidence, which refutes Ms. Goss's credibility, this Courts Record already contains ample evidence, which refutes Ms. Goss's credibility, beyond plain "common sense".

Not only is there no basis that exists, which this Court could possibly rely upon to discredit the statements of any one of these three individuals, this court is in fact required to accept all evidence, statements, and representations made by the non-moving party as *true*, and draw all inferences in favor of the non-moving party. When these statements are accepted as true, the entire basis that Nestle relies upon vanishes, and Nestle's "Defense" falls like a house of cards. Not only does Nestle's defense self-disintegrate, this Court will clearly see just this one small aspect of the "hostile environment" which was imposed upon McKenna at the time in 2004, but Nestle still continues not only to fail to remedy, but continues to orchestrate, condone, acquiesce, and champion in its attempts to assassinate McKenna's character, but for no other reason than McKenna opposes Nestle's *continuing*, unlawful employment practices.

---

The Plaintiff, Kevin H. McKenna ("McKenna") opposes the Defendant, Nestle Purina PetCare Co.'s ("Nestle") Motion for Summary Judgment primarily upon the grounds of **Credibility.** Nestle's Motion for Summary Judgment is critically reliant on the credibility of

Nestle themselves, Ms. Goss, and Ms. Kagenski. "*The court is not permitted under Rule 56 to make credibility choices*"[2], "*Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate*"[3]. "*In the end, resolution of* [Nestle's] *case turns on an assessment of the credibility of the various persons involved, including* [Goss, Kagenski, and others], *and the employees who worked with* [McKenna] *and commented negatively on his demeanor. Summary judgment is therefore improper*".[4] "*Credibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment; rather, the evidence should be viewed in the light most favorable to the non-moving party*".[5]

Federal Rules of Civil Procedure, Rule 56 Committee Notes, Purpose of Revision, Subdivision(g), final paragraph, final line states: "*Motions for summary adjudication should not be filed merely to "educate" the court or as a discovery device intended to flush out the evidence of an opposing party.*". McKenna believes that this is one Nestle's intents and/or strategies to do exactly that. There can be no other reason within Nestle's Motion for Summary Judgment to state what Plaintiff can or "*Plaintiff cannot*" do, McKenna therefore deems the intent of an opposition to a Motion for Summary Judgment is to provide only that which provides the Court with sufficient means on which it can justly rely upon in denying the motion.

As such, McKenna believes the record already contains sufficient evidence, by means documents already filed by McKenna upon this Case's Docket at Document 132, Filed 04/07/2008, that when all evidence accepted as true, and inferences drawn in favor of McKenna,

---

[2] Federal Rules of Civil Procedure, Rule 56 Committee Notes, Purpose of Revision, Subdivision(b).
[3] Federal Rules of Civil Procedure, Rule 56 Notes of Advisory Committee on 1963 Amendments to Rules, Subdivision(e).
[4] District Judge Algenon L. Marbley, *Jon Spengler v. Worthington Cylinders*, Case 2:05-cv-00977-ALM-TPK, Document 36, Filed 09/24/2007, Page 22 of 22.
[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)

is amply sufficient for this Court rely upon that *Ms. Goss's "credibility"* cannot be relied upon. Magistrate Judge Terrance P. Kemp own statements[6], and those documents referred to within section "III." of the text of that "Opinion and Order" on "02/05/2007", Document 77, provides an additional basis for this Court to rely upon in regards to the "controversy" in regards to the "truth" (IE – credibility) in Ms. Goss' recitation of events.

## Ms. Goss's Credibility:

As only a few of the many other, additional "samples" as to the lack of Ms. Goss's credibility;

Ms. Goss has stated *five* (5) completely different (documented) reasons for her termination of employment with Nestle. (Please see "**Attachment A**").

Ms. Goss testified under oath, that it is Ms. Goss's belief/understanding that McKenna had complained of sexual harassment by Ms. Goss in 2004, even after this very litigation which involves those very same events had been in process for nearly a year, even after McKenna had vehemently warned Nestle of his "concerns" in regards to Ms. Goss's involvement within this litigation (Please See "**Attachment B**"), and even after plainly and directly stating to Ms. Goss that McKenna feared Ms. Goss's hostility, and that those communications *not* with any intent to "rekindle" any sort of relationship with Ms. Goss, Ms. Goss believes that those exact same words of "*not rekindle*" meant that McKenna might have been interested in rekindling a relationship with Ms. Goss.

Ms. Goss *believes* that by McKenna just attempting to *cease hostility* and create "Peace" between Ms. Goss and McKenna, that McKenna's request for "Peace" could be interpreted as a desire to rekindle a "sexual relationship" with Ms. Goss. Yes indeed, it is now clear that per Ms.

---

[6] "… the Court has had the occasion to review other filings in this case and notes that most of the statements set forth in #18 appear to be the version of the events set forth by Nancy Goss. The Court understands that there may ultimately be a substantial controversy over whether Ms. Goss's recitation of these events is true."

Goss's interpretation of attempts to cease fear and hostilities and to create Peace, we now know that the United States of America's attempts (past, present and future) to cease hostilities and create Peace in the Middle East are in reality an attempt to lure those warring countries into a "sexual relationship". (Please see "**Attachment C**", also see Ms. Goss' Deposition Transcript page 86 lines 16-21, and further, starting at Page 237 at line 19, through to page 239 at line 7).

Ms. Goss *believes* that McKenna's Office was a "bedroom", and that was one of the reasons that Ms. Goss became hostile towards McKenna and females when McKenna would have to work with females within Nestle's Zanesville facility, in McKenna's Office, with the door open, discussing work related matters. (Please see Ms. Goss's Deposition Transcript starting at page 67, line 6 through to page 68 at line 5, and also please see starting at page 271, line 21 through to page 274 line 23).

**Ms. Kagenski's Credibility:**

Ms. Kagenski impeaches her very own credibility, within her very own "Affidavit" at Statements 7 through 9, when Ms. Kagenski "swears" within that Affidavit that Ms. Goss provided Ms. Kagenski a document on "August 31, 2004 or September 1, 2004 [7] " that has a print date of "9/2/2004" at the bottom of that very document. Significantly, this exact alleged evidence is one of the very documents Nestle has within its possession that has an "original" document associated with it, which Nestle allowed McKenna to "see" with his very own eyes. The "original" document is a yellow "Post-It Note" affixed to that alleged evidence, dating that the document was given to Ms. Kagenski no sooner than "9/3/04". Additionally, this exact same document was raised at both Ms. Goss's and Ms. Kagenski's depositions ("Defendant's Exhibit 56" and "Plaintiff's – CK-26" respectively. Please see **"Attachment D"** for copies of those deposition documents, and Ms. Kagenski's very specific deposition testimony, specifically

---

[7] It is actually extremely well documented that those events occurred on August 31, 2004.

relevant to that exact same document, please also see Ms. Goss's Deposition Transcript starting at page 148, line 21 through to page 149 at line 10). As "proof" that McKenna had seen the original document, the location of the "Post-It" note on McKenna's copy, which was made at that time, is located differently when a photocopy of the Post-It note was made, than on Defendant's Exhibit 56.

Within Ms. Kagenski's "Affidavit", Ms. Kagenski characterized the issues between Ms. Goss and McKenna as "unremarkable", however that convenient (mis)characterization made by Ms. Kagenski within her post-hoc Affidavit which is apparently drafted by Nestle's legal counsel, does not correspond in the least with Ms. Kagenski's deposition testimony (Please see Ms. Kagenski's Deposition Transcript starting at page 96, line 12 through page 102, please also see *Id.* at pages 73-76)

Ms. Kagenski continues to impeach her own credibility within her very own Affidavit at Statement #16, Where Ms. Kagenski "swears" that Ms. Link read "The Letter" to Ms. Kagenski on "September 24, 2004". September 24, 2004 was a Friday, Ms. Ellis's Affidavit accurately represents that Ms. Ellis received "The Letter" on that Friday, *at home*, which can only have happened when Ms. Ellis left work for the day, for the week, and arrived home that night after work. McKenna plainly recalls, calling Ms. Kagenski to inform her of the existence of "The Letter" on Monday, September 27, 2004. Ms. Ellis's Affidavit supports the fact that she brought it to work and showed it to Ms. Link. "The Letter" from Ms. Goss to Ms. Ellis never made it to any other persons knowledge until that following Monday, September 27, 2004. McKenna's personal cell phone records, his personal recollection, and the fourth paragraph of Ms. Kagenski's "Employer Statement" which she drafted on or about "6/15/05", Ms Kagenski's specific and relevant deposition testimony support this irrefutable fact (Please see "**Attachment**

E" for documents which support those facts). Ms. Ellis did not take "The Letter" to Ms. Link until after McKenna had told Ms. Ellis it was imperative that she did. This event took place on either September 28, or 29, 2004. It is factually impossible for Ms. Link to have read "The Letter" to Ms. Kagenski on September 24, 2007.

Nestle's very own internal documents, created by Ms. Kagenski's superior (Plant Manager, Dante Benincasa) impeach Ms. Kagenski's credibility, right at the very heart of matters materially relevant to this Case (Please see "**Attachment F**"). There is no reason that Nestle can now attempt to represent to this Court, that this Court should now "trust" in the "credibility" of Ms. Kagenski" more than Nestle's own personnel, which Ms. Kagenski directly reports to.

### Nestle's Credibility:

Nestle impeaches its own credibility within Nestle's Motion for Summary Judgment within Nestle's alleged "Statement of Facts" at page 6, where Nestle's self-serving, un-supported, conslusory declaration that, #1) "*It is axiomatic that as an Information Systems Technician, Plaintiff was expected to be familiar with and abide by the Company's ECP*", and #2) at page "19, end of second paragraph "*The very person in charge of Nestle's computer system…*". Nestle did not produce, and there is absolutely no evidence, which Nestle can produce to support such claims[8], for no other reason than; no such expectations ever existed (Please see "**Attachment G**" for McKenna's last "Performance Objectives", this comprehensively documents all of McKenna's job expectations). McKenna's job responsibilities never included over seeing Nestle's computer systems as it relates to Nestle's Electronic Communications

---

[8] This representation to the Court is plainly false, it is absolutely impossible for the statement and/or representation to have evidentiary support, Nestle has not (and cannot) provided evidentiary support. This is a Rule 11 violation, this Court should Order Nestle to provide that evidence which Nestle relies upon to support the statement and/or representation made to this Court. Then issue a "Show Cause" Order, as to why Nestle should not be held in contempt on this one statement alone.

Policy, nor was McKenna ever in "charge of Nestle's computer systems, McKenna was a "Information Systems Technician", "period". As such, this is yet another (mis)representation (IE – FRCP Rule 11 violation) made by Nestle upon this Court, which cannot ever have any evidentiary support.

On end of Page 8 of Nestle's Motion for Summary Judgment, Nestle states that "Plaintiff acknowledges he violated the policy", then cites an isolated portion of McKenna's deposition transcript to support that contention. However, Nestle intentionally fails to accurately represent McKenna's testimony during his deposition, to this Court. For an accurate representation of McKenna's position on this exact same issue please see McKenna's Deposition Transcript at page 100, lines 7-19, this was repeated on page116, lines 4-11 and again on page117, lines 18-23. It seems rather apparent that Nestle does not want this case adjudicated based upon the actual merits of the case, but rather what statements can be manipulated to tell a "story" most unfavorable to McKenna, and most favorable to Nestle.

On page 16 of Nestle's Motion for Summary Judgment, Nestle continues to make intentional misrepresentations to this Court (within a dispositive motion, again, a Rule 11 violation). In Nestle's attempt to over dramatize, over sensationalize, and represent McKenna in the "worst possible light" possible to this Court, Nestle represents to this Court that Ms. Goss provided the email which Nestle referenced by Footnote #3, while at the same time, Nestle has provided "Exhibit C" a supposed "sworn affidavit" of Mr. Garry DeWit, where Mr. DeWit "swore" "Nestle's Information Security Department" provided that email to him (See Mr. DeWit Affidavit at Statement #5). As further, incontestable proof that Nestle is exercising "willful blindness" in it's endorsing of any statement of the non-credible witness of Ms. Goss, significantly Nestle relies entirely upon Ms. Goss's (delusional) interpretation, of "sexual

innuendo" Ms. Goss made, and errantly attempting to assign it to McKenna. Nestle very simply accepts any statement Ms. Goss may be able to make "carte blanc", which Nestle may be able to use to show McKenna in the worst possible light, while either never conferring with McKenna. McKenna has absolutely no clue whatsoever how and why it is that Ms. Goss may be able to make such an interpretation of those referenced statements, but Nestle does not hesitate in the least to assign any interpretation Ms. Goss may be able to make, to McKenna.

Furthermore, Nestle's still/continual "ever changing" reasons for the termination of McKenna's employment, continues to impeach Nestle's credibility. Ms. Goss, Ms. Ellis and Ms. Kagenski (IE – "Local HR Manager") are inseparably infused into Nestle's most recently articulated reason(s) (IE – Nestle's "Motion for Summary Judgment") for the termination of McKenna's employment, where at the moment in time when McKenna's employment was terminated, Nestle very articulately stated the reason for the termination of McKenna's *"has no relationship to any conversations you [McKenna] may have had with your local HR Manager"*. Even now, after over three and a half years since the termination of McKenna's employment with Nestle, and two and a half years of formal litigation, Nestle still cannot get its "story" right, as to events surrounding the termination of McKenna's employment.

Additional self-impeachment of Nestle's own credibility is that very significantly within Nestle's Motion for Summary, is the absence of the stated reasons made within Nestle's Position Statement to the EEOC. Nestle themselves "object" to their very own materially relevant statements to this Case, even though Nestle took great pains to insure the context of that "Position Statement" to the EEOC was on this Case's Record/Docket (Please "**Attachment H**", and please also see Goss Deposition transcript starting at page 186, line 13 through page 187 at line 11).

Still even further, Nestle makes blatantly fraudulent representations to this Court within Nestle's Motion for Summary Judgment on page 8, last paragraph, where Nestle states: "*In October 2004, Nestle terminated Goss for threatening a co-worker based upon the contents of the letter sent by Goss to Ellis. Goss Depo. Tr. p. 46, ll. 17-20*", where just thirteen (13) lines later, within that exact same deposition transcript which Nestle relies upon to commit its act of fraud upon this Court, *Ms. Goss, the very same person Nestle relies upon for that exact representation, EXPRESSLY corrects Nestle on page 47 at lines 1-11*. Nestle has previously ADMITTED to this Court that "*Ms. Goss was terminated for being an 'overt-threat', for harassing and threatening her co-worker(s).*"[9] There can be nothing, which can demonstrate any more plainly or clearly to this Court, that this Court cannot rely upon any representation that Nestle can make to this Court, than this instant example.

Nestle is eager to point out that McKenna states that he knows he violated Nestle's Electronic Communications Policy[10]. Nestle must believe that this Court can read only the words Nestle directs the Court to read, because within that exact same statement, McKenna continues by saying, "*but I have absolute confidence that the majority of Administrative personnel also violate that same policy, whether it be to any greater or lesser extent is a mute point, the point is, that very few if anyone would stand the test of absolute policy compliance, and I am no different.*" McKenna's statement does not stand-alone, it is bolstered by none other than Nestle's only other Information Systems employee at Nestle's Zanesville Plant, Dave L. Lyons. Dave Lyons[11] even goes much further than McKenna by saying, "*The Electronic communications*

---

[9] See Plaintiff's Amended Complaint, Document 3-1, page 5 of 30, first bulleted item, and Nestle's Answer, Document 7, page 2 of 5, #6, "Nestle Admits it terminated Ms. Goss as alleged in Plaintiff's Amended Complaint
[10] Defendant's Motion for Summary Judgment, identified as Page 11 at the bottom of the page.
[11] Dave L. Lyons and Kevin H. McKenna were the only two Information Systems employees at Nestle's Zanesville Plant. As such, there can be no two individuals more familiar with Nestle's routine "IT" or "IS" practices at Nestle's Zanesville Plant.

*policy is written in such general terms that it could conceivably be used as a crutch to get ANYBODY terminated that they want to "* (Please see **"Attachment I"**, Nestle's own internal legal communication). However, Nestle is not quite so eager to point out to this Court, that Nestle *directly and officially* responded to McKenna's email, which is previously and very specifically addressed on this Cases docket at Document 22, beginning at page 12 of 26. Nestle specifically stated within that official memorandum, that McKenna's termination of employment did not have "any relationship" to Ms. Goss, yet in Nestle's Motion for Summary Judgment, where Nestle attempts to justify the termination of McKenna's employment, Ms. Goss is referenced countless times! Nestle does not stop there, Nestle had even made that exact same representation to the State of Ohio even *after* litigation in this very Case had already commenced (Please see **"Attachment J"**).

Nestle's mendacity does not stop there. In fact, there is no end to Nestle's mendacity in this Case. In Nestle's Position Statement to the EEOC, not only did Nestle "withhold"[12] significant and materially relevant information from the EEOC, Nestle willfully misrepresented the information (Please, again see **"Attachment H"**, Nestle's Position Statement to the EEOC, Page 3), *"Notably, Mr. McKenna did not complain of sexual harassment…"*, and on page 6, Section B, last paragraph, *"Suffice to say, Mr. McKenna never complained about sexual harassment"*. Nestle has not "discovered" anything new, that "Nestle" did already know since this action commenced. McKenna will now provided yet another one of McKenna's still incomplete "drafts" of Attachments/ Exhibits[13] which intended accompany McKenna's yet

---

[12] *"Thus, the issue is whether the withholding of relevant documents by an employer from an administrative investigation of discrimination charges is evidence that the employer maliciously or recklessly deprived an employee of his or her federally protected rights."*, see Schatzman v. Martin Newark Dealership Inc., 158 F.Supp.2d 392 (D.Del. 2001), Section "Punitive Damages".

[13] McKenna has already referenced a similar Attachment/Exhibit earlier in this Memorandum, referencing Document 132, Filed 04/07/2008

unfiled, cross "Motion for Summary Judgment" to show, in support of McKenna's "opposition" (Please see "**Attachment K**"), which clearly illustrates Nestle's fraud upon the EEOC, that Nestle clearly was aware that McKenna complained of harassment to Nestle. Nestle also withheld "The Letter" Ms. Goss and sent to Ms. Ellis, and McKenna's documented objection to Nestle's alleged "Sexual Harassment Warning" against McKenna, which was in the possession of Nestle's Legal Department at the time it was withheld from the EEOC (Please see "**Attachment L**"[14]).

## McKenna MUST Oppose a Key Misrepresentation Made by Nestle:

Nestle has raised within Nestle's "Motion for Summary Judgment" at "page 3 and 4"[15], that McKenna had allegedly "hit" on Ms. Goss, to the point that Ms. Goss was "in tears", thus allegedly causing Ms. Goss's to file an alleged complaint of "sexual harassment" against McKenna. Nestle is yet again intentionally withholding materially relevant *facts* from this Court, in regards to those exact same statements.

First, this Court needs to be provided with *all* of the relevant documents associated with McKenna allegedly "violating Nestle's sexual harassment policy on October 21, 2002" (Please see "**Attachment M**", and Ms. Goss's Deposition Transcript starting at Page 2, line 1, through to Page 15, line 10). McKenna requests this Court view the "email" of Nancy Goss, with the date of July 26, 2002 very carefully. These are in fact the "emails" Ms. Goss provided to Nestle in

---

[14] Nestle has also provided this document in "original" electronic format, as such it is authenticated as true and correct. "Proof" that this document was in the possession of Nestle's Legal Department is made by the FAX number of Nestle's Legal Department at the top of the page, and the date it was sent in that same line.

[15] McKenna only has access to Nestle's "Motion for Summary Judgment" as it was served upon McKenna, and not as it is identified on the Courts Docket, since the copy on the Courts Docket is "Sealed" and therefore unavailable to McKenna as is available to this Court. As such, McKenna can only identify the "pages" as they are numbered within Nestle document served upon McKenna.

October of 2002[16], and which Nestle relies upon as the basis of McKenna allegedly violating

Nestle's sexual harassment policy. No, indeed Nestle does not want to provide the basis of this

now known to be false violation of it sexual harassment policy, because Nestle knows those

emails cannot support a basis, to represent to this Court in support of an alleged violation of its

sexual harassment policy. Just as Nestle has withheld that information from this Court, Nestle

also withheld that information from the EEOC. Nestle knows that the fact that some sort of

"warning" being on McKenna's record will get Nestle far more mileage in assassinating

McKenna's character and reputation, than providing the actual information behind the

"warning". Yes, now this Court has the full disclosure of what this heralded complaint against

McKenna was.


There are many more facts that Nestle has not, and will not disclose to this Court

**Fact #1)** Ms. Goss was "attracted" to McKenna, before McKenna had ever even accepted

employment with Nestle. Mr. McKenna entered the premises of Nestle for the first time

for his job interview. Ms. Goss's attraction ("Insane Obsession") to McKenna had

already begun. McKenna had never met Ms. Goss prior to that time, and was not even

employed with Nestle at that time (Please see Ms. Goss's Depo. Tr., starting at Page 212

at line 18, through to Page 213 at line18).

**Fact #2)** Ms. Goss believes that friendly support from a co-worker, in regards to custody

of her children is "hitting" on her. (Please see Goss Depo. Tr. Page 215 at lines 13-23,

which is further referenced at Page 318, lines 12-19).

---

[16] First this Court must note that these emails are dated 3 months prior to Ms. Goss reporting these alleged horrid acts by McKenna to Benincasa and Link. Secondly, the contents of those emails do not constitute any violation of Title VII.

**Fact #3)** Ms. Goss believes that having a subsequent, "humane" conversation with her, in regards to what made her fall unconscious after literally crawling into the middle of Nestle's lobby and vomiting, where she had been removed by stretcher, and immediately transported by Ambulance[17] to the nearest hospital, is "hitting" on her. (Please see Goss Depo. Tr., again at Page 318, lines 12-19)[18].

**Fact #4)** Ms. Goss believes that because McKenna unwittingly ending up in a conversation in regards to Ms. Goss's *menstrual period* [19], that McKenna was "hitting" on her. (Please see Goss Depo. Tr. starting at Page 315 at line 19, through to Page 318 at line 22).

**Fact #5)** Ms. Goss believes that these very same (and other similar) acts of being "kind" was "hitting" on her, as a way to coerce Ms. Goss to "give in", to McKenna, who she was "so attracted to". Ms. Goss believes that by McKenna being "kind" to Ms. Goss, that it was a "sexual advance", with "ulterior motives". (Please see Goss Depo. Tr. Page 315, lines 4-18)

**Fact #6)** What caused Ms. Goss to "cry", was the fact that Ms. Goss felt that her being insanely, "so attracted", and "so tempted" by McKenna was wrong from everything she had been brought up to believe. (Please see Goss Depo. starting at Page 312, line 6, through to Page 313 at line 21).

---

[17] McKenna, believing Ms. Goss was literally near death, immediately made a 911 call for an ambulance. McKenna also immediately accessed Nestle's "Emergency Contact" information for Ms. Goss, when he also immediately notified the emergency contact number she had provided for Nestle, Ms. Goss's mother.

[18] This "subsequent", "humane" conversation McKenna had with Ms. Goss, ended with McKenna having a "conversation" with Ms. Goss in regards to her menstrual period. Ms. Goss believes that McKenna unwittingly ending up in a conversation in regards to Ms. Goss's menstrual period was "hitting"

[19] McKenna "reserves the right" to assert, that no matter how compassionate, civil, supportive McKenna may have the capacity to be, that there are some things that McKenna would *not* converse about, had he known *prior* to initiating the conversation, what the "problem" was that caused Ms. Goss to fall unconscious in Nestle's lobby.

Just because the angst/guilt Ms. Goss felt because of her, uncontrollable, insane sexual attraction to McKenna, does not make McKenna's common, everyday, civil, friendly, humane acts of kindness, at the workplace, inappropriate, "sexual advances" or "hitting" on Ms. Goss. As is documented in "**Attachment M**", McKenna never even knew what this alleged "complaint" of "sexual harassment" was against him until years after McKenna's termination of employment with Nestle.

## Nestle Impeaches Ms. Goss's Credibility:

While Nestle now whole-heartedly attempts to endorse (IE - "Rubber-Stamp") any statement, which Ms. Goss may have the capacity to make and Nestle thereafter may be able to cite out of context to portray McKenna in the worst possible light, Nestle themselves have impeached Ms. Goss's credibility on multiple occasions.

Ms. Goss states "The Letter" which she sent to Ms. Ellis was "forgiving". Any *sane* reader of "The Letter" Ms. Goss sent to Ms. Ellis can plainly see/read that it is one of the most insane, hostile, vile documents that any human could compose, and only an irrational person could believe "The Letter" is "forgiving". Mr. Dante Benincasa, the Plant Manager of Nestle's Zanesville Plant, to whom Ms. Goss reported to, stated that he did not view "The Letter" Ms. Goss sent to Ms. Ellis as forgiving. Nestle in a sworn response to formal request for admission stated "The Letter" was hostile and threatening. Nestle, further substantiates these position's by terminating Ms. Goss's employment, if Nestle genuinely believed every word Ms. Goss could state, Nestle would not terminate Ms. Goss's employment for "forgiving" a co-worker. Common sense mandates an understanding that "The Letter" is not "forgiving" (Please see **"Attachment N"**).

## Federal Rules of Evidence – Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time:

Even if Nestle could establish that the evidence is relevant, there simply cannot be any clearer example of evidence statements, representations or evidence that should be excluded on grounds of prejudice, *and* confusion, *and* waste of time. The multiple use of "and" has been intentionally used, because those representations made by Nestle are prejudice, *and confusion and waste of time, combined.*

Nestle, on one hand seems to understand the temporal scope of this case as is stated within the Complaint, which is proven by the statement of dates within the affidavits as provided in support of Nestle's Motion for Summary Judgment. This Court seems to understand as is articulated in an Opinion and Order, "*Given the current state of the record, the Court does not believe that inquiries concerning Mr. McKenna's relationship history have anything to do with the single claim of discrimination propounded in this case relating to a very abbreviated time frame between when he first notified Nestle officials that he was being harassed by Ms. Goss and when his employment was terminated, a period of less than two months*". (*emphasis* added) (February 5, 2007, Document 77, "Section X", paragraph two).

But on the other hand, Nestle rambles endlessly in a smear campaign against McKenna, where Nestle is apparently trying to argue that the undisputed, "consensual" relationship between McKenna and Ms. Goss prior to the end of July 28, 2004, must in some way be probative that the harassment McKenna endured after that time was consensual?

**Inadmissible Evidence – Nestle is in "Default":**

A defendant's legitimate, nondiscriminatory reason must be "*clearly set forth, through the introduction of admissible evidence.*" St. 12 No. 07-1284 Mary's Honor Ctr. v. Hicks, 509

U.S. 502, 507 (1993); Tx. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981); Blair v.

Henry Filters Inc., 6th Cir., No. 05-2437, 10/15/07.

Federal Rules of Civil Procedure, Rule 56 limits the materials the Court may consider in

deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits." Copeland v. Machulis, 57 F.3d 476, 478 (6th

Cir.1995) (quoting Federal Rule of Civil Procedure 56(c)). Moreover, affidavits must meet

certain requirements:

> *Affidavits shall be made on personal knowledge, shall set forth*
> *such facts as would be admissible in evidence, and shall show*
> *affirmatively that the affiant is competent to testify to the matters*
> *stated therein. Sworn or certified copies of all papers or parts*
> *thereof referred to in an affidavit shall be attached thereto or*
> *served therewith.* (Federal Rules of Civil Procedure, Rule 56(e))

The Sixth Circuit has held "that documents submitted in support of a motion for summary

judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded."

Moore v. Holbrook, 2 F.3d 697, 699 (6th Cir.1993). Thus, in resolving a Rule 56 motion, the

Court should not consider *unsworn or uncertified documents*, id., unsworn statements, Dole v.

Elliott Travel & Tours, Inc., 942 F.2d 962, 968-969 (6th Cir.1991), inadmissible expert

testimony, North American Specialty Ins. Co. v. Myers, 111 F.3d 1273, 1280 (6th Cir.1997), or

hearsay evidence, Hartsel v. Keys, 87 F.3d 795, 799 (6th Cir.1996); Wiley v. United States, 20

F.3d 222, 225-226 (6th Cir.1994)[20].

Nestle's Motion for Summary Judgment attempts to make improper/bad faith use of

witness Affidavits of Ms. Kagenski and Mr. DeWit to Certify the Authenticity of evidence

and/or documents which have been "beat to a bloody pulp" (IE – "McKenna's complete

Outlook") in this Case, in that those (admissible originals) documents *simply "no longer exist"*

---

[20] Michigan Pork Producers, et a l. v. Campaign For Family Farms, et al. v. USDA. (229 F. Supp.2d 772)

[21]. Unfortunately for Nestle, Nestle and McKenna relied upon the exact same source of evidence, *McKenna's "complete Outlook"*, which Nestle has now satisfactorily represented to this Court, and this Court has accepted, that *Nestle destroyed McKenna's Outlook*, and that it no longer exists.

This very Court, by means of Presiding Judge Algenon L. Marbley, in tandem with Nestle, have irrefutably established within this Court, that evidence that Nestle is attempting to improperly submit by "Affidavit", simply does not exist. Neither Mr. Garry DeWitt, nor Ms. Carol Kagenski are "expert", nor qualified to Certify, Authenticate, Aver, or Swear to the authenticity of by any means, of documents they did not receive, nor author. McKenna disputes the credibility, authenticity for no less than the reasons already formally served upon Nestle in regards to this exact same matter (Please see "**Attachment O**").

In only one of several manners, McKenna can easily meet the prima facie burden for retaliation by simply mirroring the teachings of *Randolph v. Ohio Dept. of Youth Servs., 453 F.3d 724, 732 (6th Cir. 2006)*. First, just as in Randolph, McKenna can point to multiple protected activities; 1) McKenna's report to the Zanesville Police Department, 2) McKenna's August 31, 2004 complaint to Ms. Kagenski, Nestle's HR Manager, 3) McKenna's second, animated complaint to Ms. Kagenski by his personal cell phone on September 27, 2004, and 4) McKenna's repeated complaints to his co-worker, Lisa Ellis from July of 2004 through to

---

[21] Presiding Judge Algenon L. Marbley, this Case C2-05-976, Document 97, filed 09/24/2007, Section "VI."

  "*Mr. McKenna again requests that Nestle produce the contents of his email account at or about the time of his termination and, alternatively, argues that Nestle should be sanctioned if it actually destroyed the emails in that account (which Nestle claims to have done...)*"

  "*After reviewing this and prior filings relating to this account, the Court concludes, first, that Nestle has now provided an adequate explanation of why the information in Mr. McKenna's email account is no longer available.*"

  "*As most recently articulated, that policy provides that emails deleted by the user are overwritten after seven days, and that all documents relating to a terminated employee are eliminated after 30 days. Since both of these dates have long since passed, it is consistent with Nestle's policy that the emails requested by Mr. McKenna no longer exist.*"

September 27, 2004 when advised Ms. Ellis to take "The Letter" to Nestle's management on behalf of both Ms. Ellis and McKenna, in which Ms. Ellis expressly informed Nestle that McKenna was being harassed in her complaint against Ms. Goss.

Second, McKenna can show that Nestle knew he was engaging in protected activity. When viewing McKenna's "Circumstantial Evidence" of Nestle either knowing or should have known McKenna was being harassed and/or had expressly served notice upon Nestle those conditions existed, it is irrefutable that Nestle knew McKenna was engaging in protected activity. Even allowing for Nestle to deny that Nestle knew, "*Because (McKenna) reasonably believed that (his) actions in reporting the harassment were protected activity, (he) satisfies the first element of (his) retaliation claim.*" *Id.*

Next, unlike Randolph, the termination of McKenna's employment with Nestle easily satisfies adverse employment action by any standard.

"*Fourth, (McKenna) must establish that there was a causal connection between the adverse employment action and the protected activity.*" *Id.* McKenna's protected activities were on going with Ms. Ellis, inclusive of the co-filing (IE – simultaneously filing with Ms. Link, and Ms. Kagenski) of a complaint with Ms. Ellis on September 27 by McKenna to Ms. Kagenski, and September 28-29, 2004 by Ms. Ellis to Ms. Link. McKenna expressly informing Ms. Kagenski on August 31, 2004 in addition to interactively cooperating with Ms. Kagenski's "Investigation" throughout the month of September 2004, and July 28, 2004 to the Zanesville Police Department. Significantly, in establishing "strong temporal proximity", McKenna's final, most emphatic "complaint" was on September 27, 2004, less than two weeks prior to McKenna being placed on "Administrative Leave" as a precursor to the termination of McKenna's employment on October 14, 2004. Even ignoring that it is irrefutable and undisputed that Ms.

Ellis's complaint (an action, protected activity which McKenna instructed take) was the nexus of the "investigation" which lead to the termination of McKenna's termination, the temporal proximity itself is alone, highly probative. However, *"In this case, the timing of (McKenna's) placement on administrative leave and eventual termination is coupled with the fact that (he) was subjected to rumors about inappropriate behavior between (he and his co-workers) that led to two investigations of (his) conduct. These investigations were not to determine whether (McKenna) had been subjected to a hostile work environment, but rather were conducted with the purpose of inquiring into whether (McKenna) had engaged in any inappropriate behavior. These circumstances are sufficient to support a finding by the panel that (McKenna has) satisfied the third prong, thereby satisfying (his) prima facie burden for retaliation." Id.*

Since this Court has already established, to this Courts satisfaction, that Nestle has destroyed McKenna's complete Outlook, Nestle is unable to move forward in producing a legitimate, non-retaliatory reason which must be "*clearly set forth, through the introduction of admissible evidence.*".

Even in allowing for Nestle to establish its legitimate, non-retaliatory reason for the termination of McKenna's employment by means of inadmissible evidence, "pretext" can be established in almost countless ways, such as Nestle's profuse mendacity, which includes no less than Nestle's attempts to "cover-up" McKenna's sexual harassment complaints against Ms. Goss.

## "After Acquired Evidence Doctrine":[22]

"*Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the*

---

[22] See also generally, O'Brien v. Ohio State Univ., 139 Ohio Misc.2d 36, 2006-Ohio-4346, paragraphs 15 through 26

*discharge."* (*emphasis* added) McKennon v. Nashville Banner Publishing Co., 513 U.S. 352,115 S.Ct. 879, 886-87, 130 L.Ed.2d 852 (1995). Not only has Nestle failed to *first* establish the *alleged* wrong doings were of such severity that McKenna's employment would have been terminated, Nestle has failed to establish that in fact that McKenna did engage in the alleged wrong doings.

Nestle relies very heavily (if not "insanely") on statements made by Ms. Goss during her October 2006 deposition. Any statements made by Ms. Goss on October of 2006, which Nestle does not, "*first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it a the time of discharge*" is inadmissible. Additionally, Nestle was "aware" of this alleged relationship/affair, as it is documented in Ms. Kagenski's notes in 2004, "heralded" by Nestle to the EEOC in 2005, ADMITTED to in Nestle's "Answer" on this very Courts Docket, Document 7, Statement 2.

Not only has Nestle completely *failed to produce* anything in which Nestle would in fact rely upon, that would on those grounds alone, based upon uncorroborated allegations, been of such severity, to have mandated the termination of McKenna's employment with Nestle. In fact, Nestle's own history of "Affairs" at Nestle's Zanesville facility (IE - Plant Manager, Dante Benincasa is presently married to a former, employment subordinate of Mr. Benincasa, of whom engaged in a consensual "Affair" while both Mr. Benincasa and his now present "wife", while concurrently employed at Nestle), suggests that at the highest level of Nestle's management at its Zanesville facility, that Nestle in fact *condones* such relationships (See Nancy J. Goss deposition transcript, starting at page 207, line 12, through page 209 at line 18, see also page 336 lines 7-15 and page 341 lines 10-16. Please also note, that this latter portion of Ms. Goss's deposition was on *cross examination*, for *clarification*, see page 334, lines 5-17).

Nestle attempts to represent to this court that Ms. Goss's irrelevant and unsubstantiated allegations of McKenna's lewd misconduct, represents some sort of a basis for the termination of McKenna's employment, yet Ms. Goss had made more extensive allegations against Ms. Ellis, but yet Nestle did not, and has not terminated Ms. Ellis's employment based off of the same type of allegations from the exact same source, Ms. Goss (Please see **Attachment P**"). Even allowing for Ms. Goss's, false, defamatory allegations made against McKenna as "true", Nestle cannot now claim that as a basis for any adverse employment actions taken against McKenna, when Nestle has not taken any adverse action(s) against Ms. Ellis.

## **FRCP Rule 56(g) – Affidavits Submitted in Bad Faith:**

Ms. Carol Kagenski was deposed, proper notice was served upon Nestle (see Doc. 102), Nestle even then further responded to that notice (see Doc. 103). Counsel for Nestle was present at that deposition (Please see Deposition Transcript of Carol Kagenski, filed on the same date of this document). Defense Counsel, Jonathan R. Secrest was in attendance throughout the entire duration of the Deposition of Ms. Kagenski. Defense counsel had ample, legal opportunity to get any statements made by Ms. Kagenski under sworn deposition testimony, where Ms. Kagenski's statements would then have been subject to cross examination by McKenna. By Nestle now attempting to introduce further statements by Ms. Kagenski by means of "Affidavit" which are contrary to Ms. Kagenski's statements made during deposition testimony, surely must represent an "Affidavit Submitted in Bad Faith" (FRCP, Rule 56(g)).

As has been previously documented within this very memorandum, in regards to Ms. Kagenski impeaching her own credibility, within her very own Affidavit, Ms. Kagenski's statements are not accurate, not only not supported by evidence but in fact refuted by evidence, would surely indicate an "Affidavit Submitted in Bad Faith" (FRCP, Rule 56(g)).

Ms. Kagenski's own statement under sworn deposition testimony refute/impeach Ms. Kagenski's own (bad faith) Affidavit alleging that Ms. Kagenski viewed the circumstances between Ms. Goss and McKenna were "unremarkable", Ms. Kagenski testified that McKenna's Complaint(s) to Kagenski were:

1. EEO/Title VII.

2. The similar in nature to those reported by McKenna to the Zanesville Police Department (IE – "sexually harassed", homicidal).

Nestle is now attempting to self-authenticate to their own self-serving documents and/or evidence. "Sworn or Certified" in Rule 56 does not imply that the Affiant can make conclusory and/or self-servingly swear to otherwise self-authenticate their own self-serving evidence or uncertified documents. Otherwise, there would be nothing prohibiting any party from fabricating its own document, stating that the opposing party "Admits" to all Claims and Allegations made upon the party by their opposing party. All "McKenna" would need to do is to make his own self-serving "Affidavit", swearing that the self-serving evidence/document was self-sworn to, or was self-certified to be true and accurate.

## Representations Made Within Nestle's "Motion for Summary Judgment" Constitutes Violation of FRCP RULE 11:

Nestle has now "crossed the line". To this point, Nestle has made very questionable, if not flatly fraudulent/false representations to this Court, on many occasions throughout this Case. To this point, those "questionable, if not flatly fraudulent/false representations" have indeed occurred within the Discovery Phase of this litigation. That was then, this is now,.

Nestle's Rule 56, "Motion for Summary Judgment" is no longer within the "Discovery Phase" of this litigation, these "*factual contentions*" are now made within Nestle's Rule 56,

*dispositive motion* for "Summary Judgment. As such, Nestle is now mandated to support those stated contentions with "*evidentiary support*". Not only has Nestle failed to provide this Court of Nestle's "*factual contentions*" with any "*evidentiary support*", but also McKenna has in fact provided to this Court, "*evidentiary support*" which in fact *refutes* Nestle's "*factual contentions*" made within Nestle's *dispositive* "Motion for Summary Judgment".

Nestle has attempted to overtly circumvent due process of "unsealing" Ms. Goss's deposition transcript. Nestle has done so by attempting to mis-represent Ms. Goss in Nestle's "Motion to UnSeal" Ms. Goss's deposition transcript. This Court has already, by Magistrate Judge Kemp's voice in a 3-party "telephone conference", stated "concern" in regards to Nestle's inappropriate "para-phrased" references made to Ms. Goss's *sealed* deposition transcript, which is memorialized by the fact that Nestle's "Motion for Summary Judgment" is in fact now "sealed" by Order/instruction of Magistrate Judge Kemp, due to that "concern" on April 1, 2008.

McKenna has provided this Court with clear evidence that Nestle is acting in either or both of "willful blindness" and/or "reckless disregard" in regards to defamatory statements made upon McKenna by either or both of, Ms. Goss and/or Nestle *within* Nestle's "Motion for Summary Judgment". McKenna has provided this Court with an Affidavit that the contested (IE – DENIED, under Oath) "lewd" acts, which Nestle blindly subscribes to, are flatly denied (IE – contested, disputed), but yet Nestle attempts to represent to this Court in its Motion for Summary Judgment that McKenna does not deny those allegations.

By means of this document, this Court is now "aware" that Nestle has made false representations to this Court regards to no less than; McKenna's job expectations ("*axiomatic*"), Ms. Goss's stated reason for termination of her employment (IE – "threatening a co-worker"), to only name a couple.

As such, Nestle's acts/actions and/or statements/representations within Nestle's Motion for Summary Judgment, also are clearly designed to "*harass*" McKenna[23] and/or "*dissuade*"[24] McKenna from making or maintaining this very Claim and/or Complaint of discrimination against his (former) employer, Nestle.

The Federal Rules of Civil Procedure expressly grants this Court has the authority to make sanctions against Nestle by its upon initiative[25]. To this point McKenna has not made the appropriate Motion as is supported by FRCP Rule 11(c)(2). However, based upon the record, and the information provided to this Court within this document and documents referenced from within, McKenna calls upon this Court to exercise that authority granted upon this Court by FRCP Rule (c)(3).

## McKenna's yet Un-filed, *Cross* "Motion for Summary Judgment":

Above and beyond all matters set forth within, McKenna's *opposition* to Nestle's Motion for Summary Judgment, if this Court should deem that this document standing alone is not enough to DENY Nestle's Motion for Summary Judgment, then McKenna animatedly pleas that this Court also take into consideration any and/or all matters which will be raised upon and within McKenna's, yet unfiled, *cross* "Motion for Summary Judgment".

## In Closing:

The matters raised within this Memorandum in regards to "credibility" of Nestle, and all that Nestle is attempting to represent to this Court is only the proverbial "tip of the iceberg" in regards to the "credibility" of any representations that Nestle has made to McKenna, the EEOC, and now to this Court. This twenty-some page document is only a small fraction

---

[23] FRCP Rule 11(b)(1)
[24] *Burlington Northern & Santa Fe Railway Co. V. White; Certiorari to The United States Court Of Appeals For The Sixth Circuit No. 05–259. Argued April 17, 2006—Decided June 22, 2006*
[25] FRCP Rule 11(c)(3), "*On the Court's Initiative*"

misrepresentations made by Nestle within its Motion for Summary Judgment, and does not even

begin to address what the real issues are, and those being that McKenna was harassed and has

been endlessly retaliated against for complaining of the harassment. Nestle's Motion for

Summary Judgment must be denied.

Very Sincerely and Respectfully Submitted.

Kevin H. McKenna, Plaintiff (Pro Se)
kmckenn@columbus.rr.com
4885 Adamsville Road
Zanesville, Ohio 43701
(740)452-3124

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing is deemed served upon the party listed below, by its filing with this Court and the opposing Counsels access and notification by means of the PACER/ECF electronic filing system as provided by Local Rule 5.2(b).

BRIAN E. DICKERSON (0069227)
bdickerson@dickerson-law.com
JONATHAN R. SECREST (0075445)
jsecrest@dickerson-law.com
5003 Horizons Drive, Ste 200
Upper Arlington, OH 43220
Phone:  614-339-5370 ext 372
Fax:     614-442-5942

Kevin H. McKenna, Plaintiff (Pro Se)
kmckenn@columbus.rr.com
4885 Adamsville Road
Zanesville, Ohio  43701
(740)452-3124