**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KEVIN H. MCKENNA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **Case No. C2-05-976** |
| **v.** | : | |
| | : | |
| **NESTLE PURINA PETCARE CO.,** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | **Magistrate Judge Mark Abel** |
| **Defendant.** | : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant's and Plaintiff's Cross Motions for

Summary Judgment. Plaintiff Kevin McKenna ("McKenna") sued Nestle Purina Petcare

("Nestle"), his former employer, asserting a claim for retaliatory termination and a claim for

sexual harassment. Nestle also filed Motion to Strike exhibits attached to McKenna's Motion

for Summary Judgment. For the reasons stated below, the Court **DENIES** Nestle's Motion to

Strike, **GRANTS** Nestle's Motion for Summary Judgment, and **DENIES** McKenna's Motion for

Summary Judgment.

### II. BACKGROUND

#### A. Factual Background

McKenna worked for Nestle in Zanesville, Ohio as an Information Systems Technician

from October 2001 until his termination on October 14, 2004. His job duties included

overseeing Nestle's computer system, and assisting Nestle employees with their IT maintenance

issues. All Nestle employees, including McKenna, were expected to be familiar with and abide

by Nestle's Electronic Communications Policy ("ECP").

In early October 2002, McKenna began making verbal and email advances towards a female co-worker, Nancy Goss ("Goss"). Initially, these advances were rebuffed by Goss. Goss made it clear to McKenna that she was not interested in commencing a sexual relationship.[1] Undeterred by her refusal, McKenna continued to make advances towards Goss. Goss reported McKenna's behavior to her supervisor, Dante Benincasa. Ultimately, McKenna was written up for violating Nestle's sexual harassment policy.

In spite of these incidents, McKenna and Goss's working relationship evolved into a consensual, sexual relationship in October 2003, which lasted until July 2004. The relationship began with sexually explicit email exchanges and eventually led to sexual encounters between the two of them, both in and out of the workplace. Throughout their sexual relationship, Goss received sexually explicit emails from McKenna on a regular basis. Before the relationship with Goss, McKenna had been involved in a sexual relationship with another Nestle co-worker, Lisa Ellis ("Ellis"). During McKenna's relationship with Goss, he informed Goss of his previous relationship with Ellis, which led to Goss, Ellis, and McKenna participating in sexual trysts with each other.

The relationship between Goss and McKenna deteriorated, and in July 2004, Goss ended the relationship due to McKenna's demonstrated interest in other employees at Nestle, particularly Ellis. One month after ending the relationship, Goss sent McKenna and Ellis an email requesting that they keep any sexual relationship between the two of them out of the

---

[1] McKenna asserts that Goss was attracted to McKenna even before McKenna had even accepted employment with Nestle. Despite any initial attraction to McKenna, this Court finds McKenna's assertion to be immaterial to the events that later ensued. Sexual harassment can occur regardless of an initial attraction between the two parties prior to the commencement of the harassment.

office.  Shortly thereafter, on August 31, 2004, McKenna met with his immediate supervisor, Carol Kagenski ("Kagenski"), and complained about Goss's changed, more hostile, demeanor towards him.  McKenna verbally requested Kagenski not take any action based on his conversation with her, and again reiterated this request in writing on September 1.  (*Letter to Nestle*, Sept. 1, 2004). After complaining about Goss's behavior, McKenna admits that Goss made no further threats, offensive remarks, or sexual advances towards him.

Goss, meanwhile, met with Kagenski and another Nestle supervisor, Mitzi Link ("Link"), at Link's condo to discuss the nature of her relationship with McKenna.  She told both supervisors about what had happened between her and McKenna, and why the events would lead to her occasionally crying and making mistakes at work.  Goss also provided Kagenski with emails between her and McKenna from their private email accounts, and told Kagenski that she believed McKenna was accessing her work computer.  After meeting with Goss, and based on emails provided by Goss, Kagenski concluded that Goss and McKenna's situation was merely a common post-breakup dispute.  Kagenski determined that the best course of action was to monitor both McKenna and Goss.

In September 2004, Goss sent a hostile and threatening letter to Ellis at her home expressing her aversion towards Ellis and McKenna's relationship. Ellis informed Link of this incident, after which Link contacted Kagenski.  On October 1, after Kagenski interviewed Ellis and Goss regarding the letter, Nestle suspended Goss, pending the outcome of an investigation into the letter.  The investigation of the letter led Nestle's Information Security Department to review the Outlook folders of Goss, Ellis, and McKenna because all three individuals had been discussed in Goss's letter.  In the course of investigating McKenna's Outlook folder, Nestle

uncovered emails McKenna had sent containing pornographic pictures of a female friend and a male stripper in various sexual positions. The investigation also uncovered emails with sexually explicit language that had been sent during work hours to Goss, another woman named Tammy Sparks, and his wife. [2]

In October 2004, after the investigation was complete, Nestle terminated Goss for overtly threatening a co-worker (based on the contents of the letter sent by Goss to Ellis). Nestle also terminated McKenna for violating its ECP. Nestle suspended Ellis for three days and placed her on an Action Plan after it was discovered by Nestle that she spent an inordinate amount of time sending personal email messages during work hours, none of which were sexual in nature.

## B. Procedural Background

McKenna filed a discrimination charge with the EEOC on April 4, 2005, which was dismissed based on the EEOC's finding that no probable cause existed to support that discrimination had occurred. McKenna filed a retaliatory termination and sexual harassment claim against Nestle on October 25, 2005, approximately one year after he was terminated. McKenna alleges that Goss harassed him, that he complained of the harassment, and that he suffered retaliation for complaining of the harassment. In his Motion for Summary Judgment, filed January 26, 2009, McKenna also appears to assert a sex discrimination claim based on disparate treatment against. Nestle and McKenna now both move for summary judgment on all of McKenna's claims.

## III. STANDARD OF REVIEW

---

[2] McKenna asserts that the emails he wrote did not contain sexual innuendo, and that Goss's interpretation is "delusional." This is not true. The emails that McKenna sent to Goss were clearly indecent and contained sexually explicit content. For instance, one of these emails included a description of McKenna masturbating at work and ejaculating onto brownies. McKenna's assertion is unfounded.

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). But "summary judgment will not lie if the…evidence is such that a reasonable party could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986.) The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F. 3d 1382, 1388-89 (6th Cir. 1993). But the non-moving party "may not rest upon its mere allegations." Fed. R. Civ. P. 56 (e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991). Furthermore,

> [t]he fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits....

*Id.* (citations omitted).

# IV.  LAW & ANALYSIS

## A.  Motion to Strike

Nestle moved to strike specific pages from the exhibits attached to McKenna's Response in Opposition to Defendant's Motion for Summary Judgment. The ground for Nestle's motion is that McKenna failed to authenticate any of the documents attached as exhibits to the Response in Opposition. Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999); *see Duncan v. Village of Middlefield*, No. 93-3818, 1994 WL 269578 (6th Cir. June 17, 1994) ("pro see plaintiffs are to be accorded a measure of leniency.")  In addition "the formalities of the Federal Rules of Civil Procedure are to be applied less stringently against *pro se* litigants than against lawyers." *Oasis Corp. v. Judd*, 132 F.Supp.2d 612, 616 (S.D. Ohio 2001), *citing see Haines v. Kerner,* 404 U.S. 519, 520 (1972).  Due to McKenna's pro se status, this Court finds his exhibits should not be stricken due to failure to authenticate.  Nestle's Motion to Strike is thereby **DENIED**.

## B.  Retaliation

Title VII provides that:

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter [("the opposition clause"], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter [("the participation clause")].

42 U.S.C. § 2000e-3(a).  McKenna alleges that his termination by Nestle was in retaliation for complaining about Goss's sexual harassment.

McKenna must first establish a prima facie case of retaliation. *See Wrenn v. Gould*, 808 F.2d 493 (6th Cir. 1987). The burden then shifts to Nestle "to articulate some legitimate, nondiscriminatory reason" for its actions. *See Wrenn*, 808 F.2d 493 at 501. If Nestle carries this burden, McKenna must then prove by a preponderance of the evidence that the reason offered by Nestle was a pretext for discrimination. *See Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "Disputation of the facts underlying [Nestle's] legitimate business reason . . . is not sufficient to carry [McKenna's] burden"; rather, McKenna must present evidence to show that the reason given is an attempt to cover up the real discriminatory motive. *See Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir. 1987).

### 1. Prima Facie Case of Retaliation

To establish a prima facie case of retaliation, McKenna must demonstrate by a preponderance of evidence the following four elements: (1) McKenna engaged in legally protected activity; (2) Nestle knew about McKenna's exercise of this right; (3) Nestle took an employment action adverse to McKenna; and (4) the protected activity and the adverse employment action are causally connected. *See Wrenn*, 808 F.2d 493 at 500; *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003).

For the first element, McKenna asserts that his complaint to Kagenski about Goss functions as a protected activity because it constitutes opposition under the meaning of the opposition clause. The Sixth Circuit has enumerated the types of activities that constitute opposition under Title VII:

> [C]omplaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing

> unlawful acts by persons other than the employer – e.g., former
> employers, union, and co-workers.

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).  This Court finds that

McKenna's act of complaining to Kagenski on August 31, 2004, prior to Nestle's internal

investigation, constitutes the kind of overt opposition that the Sixth Circuit has held is protected

under Title VII.  For the second element, it is obvious Nestle was aware of McKenna's

complaint on August 31, 2004.  For the third element, Nestle's termination of McKenna's

employment constitutes adverse employment action.

The fourth element, that the protected activity and the adverse employment action are

causally connected, however, has not been satisfied.  "To establish a causal connection, a

Defendant must proffer evidence sufficient to raise the inference that her protected activity was

the likely reasons for the adverse action."  *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

McKenna asserts that the timing of his termination on October 14, 2004 was causally connected

to his numerous complaints of sexual harassment.  At his deposition he testified regarding the

reason for the retaliation complaint:

> Q: I'm asking you for what evidence you have that Nestle retaliated
> against you for your complaint against Nancy Goss?
> A. That my employment was terminated probably within close to about 30
> days, and I have no other evidence of anything unsatisfactory about my
> work performance prior to that.

(*McKenna Depo. Tr.* at p. 325).  McKenna offers no evidence of retaliation other than temporal

proximity.  For Title VII retaliation claims "temporal proximity itself is insufficient to find a

causal connection . . ."  *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir.

2007).  This Court finds, therefore, that McKenna has not established a causal connection existed

between his complaint and his termination.  Because McKenna fails to establish the fourth element, McKenna cannot make out a prima facie case of retaliation.

## 2.  Legitimate Nondiscriminatory Reason

Assuming arguendo that McKenna had established a prima facie case of retaliation, the burden would shift to Nestle "to articulate some legitimate, nondiscriminatory reason" for its actions. *See Wrenn*, 808 F.2d 493 at 501.  The Court finds that Nestle had a legitimate, nondiscriminatory reason for terminating McKenna—violation of its ECP.  Nestle's ECP specifically states that prohibited computing activities include, but are not limited to: "Accessing, sending, forwarding, downloading, printing, or deliberate receipt of: pornographic, obscene, indecent or other sexually explicit materials."  (*Electronic Communications Policy* at p. 4).  Nestle's internal investigation of McKenna's computer activities uncovered that McKenna used his Nestle computer to send sexually explicit emails to Goss and several other persons, and stored sexually explicit pictures on his computer, which were subsequently sent to his wife from his Nestle email account.[3]

McKenna even admitted that he violated the ECP.  McKenna stated, "…I KNOW that I have violated the Electronic Communications Policy, I'd never in my wildest dreams even think of challenging that fact, I don't feel as though I have ever tried to represent myself in any other

---

[3] The following are some of the emails sent by McKenna from his work computer:
    (1)  "You'll be able to feel yourself contracting all over your hand, how wet, excited you are/get, how your cunt gushes from being HF'd . . .  Mmm . . ." (*Email to Tammy Sparks*, Aug. 1, 2003)
    (2)  "Hmmmmm/Mmmmmm . . . found out something interesting . . . was sitting here a bit ago . . . *HAPPENED* to have my hand across my lap . . . started tapping my fingers . . . jeans were tight enough I could FEEL the tapping across my c#ck . . . felt GOOD, I could feel myself LIKING IT, Getting h#rd . . . I let my fingers get closer so I could feel the sensation better . . . MMMMM . . . MORE was better . . so I started PATTING it, ALMOST smacking it . . . LOVED IT!!!!!!!! WHEW!" (*Email to Goss*, June. 16, 2004)
    (3)  "I HAVE TO SAY . . . when I'm "in the mood" . . . Mitzi looks pretty damned good . . . if she TRIED, she could be a real hottie . . ." (*Email to Goss*, July 8, 2004)

way in regards to that." (*Email to Nestle, October 18, 2004*). Furthermore, McKenna was aware

that the violation of the ECP could potentially lead to his termination. He admitted, "…I very

full and well know I was/am in violation of the company's Electronic Communications

Policy…[and] am/was full aware of the potential consequences (including possible

termination)." (*Id.*)

McKenna's only refutation to Nestle's legitimate, nondiscriminatory reason for

terminating him is that the evidence against him is inadmissible and not authentic. McKenna

insists that evidence of the sexually explicit documents contained within McKenna's Outlook

account is inadmissible because it no longer exists. As part of Nestle's investigation of

McKenna, Goss, and Ellis, the Information Security Department reviewed the email Outlook

folders of all three employees, and uncovered the sexually explicit documents in McKenna's

email account. McKenna claims that since Nestle "destroyed" his Outlook account upon his

termination, the sexually explicit documents that the Information Security Department printed

off are inadmissible against him as evidence that he violated the ECP.

Under the Federal Rules of Evidence, Rule 1004, the Admissibility of Other Evidence of

Contents states:

> The original is not required, and other evidence of the contents of a writing,
> recording, or photograph is admissible if:
> (1) Originals lost or destroyed. All originals are lost or have been destroyed,
> unless the proponent lost or destroyed them in bad faith; or
> (2) Original not obtainable. No original can be obtained by any available
> judicial process or procedure.

McKenna's Outlook account was destroyed, but there has been no allegation that this was done

in bad faith. Furthermore, even though the account was destroyed, the original print outs of the

emails are available. For these reasons, this Court finds McKenna's argument that the

documents procured from his Outlook are inadmissible has no legal merit. Nestle has sufficiently established a legitimate, nondiscriminatory reason for terminating McKenna---violation of its ECP.

### 3. Pretext

Assuming arguendo that McKenna had established a prima facie case, because Nestle has established a legitimate, nondiscriminatory reason for terminating McKenna, the burden of production would once again shift back to McKenna to demonstrate, by a preponderance of the evidence, that this proffered reason is pretext for discrimination. *See Wrenn*, 808 F.2d 493 at 501. There are three ways to demonstrate pretext: (1) that the proffered reason has no basis in fact; (2) that the proffered reason did not actually motivate the termination; or (3) that the proffered reason was insufficient to motivate discharge. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

McKenna asserts that the proffered reason for his termination, violation of the ECP, has no basis in fact. There is no legitimate dispute that McKenna violated the ECP by, "Accessing, sending, forwarding, downloading, printing, or deliberate receipt of: pornographic, obscene, indecent or other sexually explicit materials" on his work computer. (*See Electronic Communications Policy* at p. 4.) McKenna's assertion that words such as "cunt" may only be vulgar depending on the context with which they are used is plainly unmeritorious. (*See McKenna Depo. Tr.* at p. 114.) Although McKenna may not consider a word like "cunt" to be vulgar or profane, its common construction is a word that is vulgar and profane. *Merriam-Webster* defines the word as:

> 1) *usually obscene*: the female genital organs; *also*: sexual intercourse with a woman;

2) *usually disparaging and obscene*.

(*Merriam-Webster Online Dictionary*, 2009 (March 31, 2009), *available at* http://www.merriam-webster.com/dictionary/cunt). *Encarta* defines the word as:

> 1) a highly offensive term for a woman's genitals (*taboo*);
> 2) a highly offensive term for a woman (*taboo*)
> 3) a highly offensive term for somebody who is viewed with great dislike or contempt, especially a man (*taboo insult*)
> 4) a highly offensive term for sexual intercourse with a woman (*taboo*).

(*Encarta World English Dictionary*, 2009 (March 31, 2009), *available at* http://encarta.msn.com/ dictionary_1861601919/definition/html). McKenna also contends that he does not see sex as a taboo topic to be discussed over work emails. (*Id.* at p. 31.) [4] Although McKenna may personally feel he is free to discuss whatever he wants at work, any reasonable person would recognize that sex is a taboo topic that should not be discussed over work emails. The Court finds that Nestle clearly has a basis in fact for determining that McKenna's emails were obscene and sexually explicit in nature, and thereby violated the ECP.

McKenna also asserts that the proffered reason for terminating him did not actually motivate the discharge; rather, he asserts he was terminated for complaining about sexual harassment. There is no evidence, other than temporal proximity, to suggest that the reason McKenna was fired was due to his complaint to Kagenski about Goss. As already stated, "temporal proximity itself is insufficient to find a causal connection . . ." *Michael,* 496 F.3d at

---

[4] McKenna admitted in his affidavit, attached to McKenna's Motion, in regards to his relationship and email communications with Goss,

> [v]irtually all of the 'candid adult/sexual' aspect of the relationship was by means of **'erotic' or 'fantasy' natured conversations through private email accounts**. There were some (approximately a 'handful') sexually natured 'events' between Goss and I, inspired by these **erotic or fantasy natured email conversations** which occurred over the duration of that relationship.

(*McKenna's Affidavit* at p. 2, emphasis added).

596. Furthermore, the Court finds that the evidence supports that the motivation for McKenna's discharge was his violation of the ECP.

McKenna finally asserts that Nestle's proffered reason for terminating him was insufficient to motivate his discharge. McKenna asserts that Nestle has never discharged another employee for violating the ECP, and that the majority of employees also violate the ECP. He also asserts that Ellis also violated the ECP, but she was not terminated. He contends these two facts establish that violation of the ECP is an insufficient reason for discharging an employee. Both of McKenna's assertions fail to establish that violation of the ECP was insufficient to motivate discharge.

First, McKenna does not assert that any other employee has ever violated the ECP by sending sexually explicit emails, or that any other employee was not terminated for sending sexually explicit emails. Many employees presumably violate the ECP in some way (i.e., spending too much time at work sending personal emails); but this type of ECP violation differs from a violation in which someone is sending sexually explicit emails from his work computer laced with obscene language and pornographic pictures. McKenna has not shown that Nestle has not or would not terminate another employee for a violation of the ECP in the way he has violated the ECP. The fact that Nestle has never discharged another employee for violating the ECP does not establish that McKenna's violation of the ECP is an insufficient reason to motivate discharge.

Second, McKenna cannot establish pretext by asserting that he was treated less favorably than Ellis, because she was not a similarly situated employee. To be "similarly situated" the individual with whom the plaintiff seeks to compare his treatment

-13-

must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Jackson v. FedEx Corp. Servs., Inc.,* 518 F.3d 388, 393 (6th Cir. 2008) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 383 (6th Cir. 1992)).  Although Ellis was subject to the same ECP as McKenna (as were all Nestle employees), Ellis did not deal with the same supervisor as McKenna, nor did they share the same position or job duties (she was an accounting clerk, and McKenna was an Information Systems Technician in charge of Nestle's computer system and internet).  More significantly, Ellis did not engage in the same conduct as McKenna.  Ellis received a Final Written Warning for violating Nestle's ECP, but Ellis' violations were for excessive use of emails, *not* for sending and receiving sexually explicit emails.  (*Kagenski Affidavit* at pp. 5-6.)  Therefore, the fact that Ellis violated the ECP, but was not terminated, does not demonstrate that a similarly situated, non-protected employee was treated more favorably.

Because McKenna has failed to show a causal connection, which is required to establish a prima facie case, and because McKenna further has failed to establish Nestle's legitimate nondiscriminatory reason was pretextual, this Court hereby **GRANTS** Nestle's Motion for Summary Judgment on the retaliatory termination claim, and **DENIES** McKenna's Motion for Summary Judgment on that claim.

### C.  Sexual Harrassment

McKenna also asserts a sexual harassment claim against Nestle. To establish a prima facie case for sexual harassment, McKenna must demonstrate: (1) he was a member of a protected class; (2) he was the subject of unwelcome harassment; (3) the harassment was based on sex; (4) the harassment unreasonably interfered with McKenna's work performance or

created a hostile or offensive work environment that was severe and pervasive; and (5) the employer knew, or should have known, of the harassment and failed unreasonably to take prompt and appropriate corrective action. *Williams v. General Motors Corp.*, 197 F.3d 553, 560-61 (6th Cir. 1999).

McKenna contends that actions taken by Goss and Ellis constituted sexual harassment. McKenna fails to show, however, that any actions taken by Goss which McKenna asserts were harassing were "based on sex." McKenna furthermore fails to show that any actions taken by Goss or Ellis created a hostile or offensive work environment. Finally, McKenna fails to show that Nestle knew or should have known of the harassment and failed to take appropriate action.

For the third prong, McKenna has not shown that any actions taken by Goss were "based on sex." "Harassment" in the sexual harassment context is defined as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." *Greenwood v. Delphi Auto. Sys., Inc.,* 257 F. Supp. 2d 1047, 1059 (S.D. Ohio 2003). "To be of a sexual nature, verbal conduct must be gender related." *Id.* If the conduct is "simply abusive, with no sexual element," that is not harassment because of the plaintiff's sex. *Id.* As the Sixth Circuit noted in *Rothenbusch v. Ford Motor Comp.,* No. 93-3945, 1995 WL 431012 (6th Cir. July 20, 1995),

> To show that the alleged harassment was based on sex, Plaintiff must prove by a preponderance of the legal evidence that but for the fact of her sex, she would not have been the object of unlawful harassment. Harassment is prohibited by Ohio law only if it is based on being male or female. ***Personal animosity is not the equivalent of sexual harassment and is not proscribed by law.***

*Id.* at *3 (emphasis added).

McKenna and Goss maintained a consensual, sexual relationship for approximately eleven months. Goss ended her relationship with McKenna on July 28, 2004. McKenna testified that Goss made no advances or sexual remarks to him between July 28, 2004 and October 1, 2004, the date of Goss's suspension. (*McKenna Depo Tr.* at p. 258-59.) McKenna could only make the vague comment that she made his life "hell." (*Id.* at p. 239.) McKenna has produced no evidence that any alleged harassment from Goss was based on sex. Instead, the evidence establishes that Goss's cantankerous behavior towards McKenna was not based on his status as a male, but based on his status as someone with whom she was romantically involved. Goss treated Ellis, a female, as adversely as McKenna, because Goss believed McKenna and Ellis were romantically involved. (*McKenna Depo. Tr.* at p. 343; *Goss Depo Tr.* at p. 36.) Thus, Goss's behavior can be described merely as "personal animosity," which is not the equivalent of sexual harassment.

For the fourth prong, McKenna has not shown that he was subjected to a hostile or offensive work environment that was severe and pervasive. In *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986), the Supreme Court held that, "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the condition of [the victim's] employment and create an abusive working environment.'" *Id.* at 67; *see Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 619 (6th Cir. 1986). In determining whether a plaintiff has met this burden, this Court must consider a reasonable person's reaction to a similar environment under like circumstances. *Rabidue*, 805 F.2d at 620.

Taking all of McKenna's allegations as true, Goss's conduct simply does not rise to the level required to be actionable under Title VII. McKenna testified that there was no one specific

act to describe Goss's actions as hostile or abusive, and that it was just her demeanor post-breakup. (*See McKenna Depo. Tr.* at p. 153) ("[t]here is no one specific act. It was just her demeanor in every way, shape and form"). He also admitted that Goss did not make any threats or demands, lewd or offensive remarks, sexual advances, or threatening phone calls. (*Id.* at p. 263.)

Taking all of McKenna's allegations as true, McKenna also has not established that the "Rope Joke" email made by Ellis, which he contends was "male bashing" rises to the level to be actionable under Title VII. Ellis's "Rope Joke" email can be characterized as more akin to "simple teasing, offhand comments, and isolated incidents," rather than "discriminatory intimidation, ridicule, and insult" sufficiently serious to have altered the conditions of McKenna's employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). No reasonable person would view the actions of Goss or Ellis as subjecting him to a hostile or offensive work environment that was severe and pervasive.[5]

Finally, for the fifth prong, McKenna has not established that Nestle knew, or should have known, of any harassment and failed unreasonably to take prompt and appropriate corrective action. This Court finds that Kagenski did not unreasonably fail to take appropriate corrective action with respect to McKenna's complaint about Goss's behavior. Indeed, once McKenna voiced concerns to Kagenski about Goss's behavior, she determined the best course of action was to monitor the situation. (*Kagenski Affidavit* at 13.) Further, McKenna acknowledges he requested no action be taken by Kagenski and followed up this verbal request

---

[5] McKenna's Motion for Summary Judgment and Reply are not well organized, and it is often difficult for the Court to determine what actions he is complaining about for what claims. To the extent he complains about any actions of Link, this Court finds that no actions or statements of Link constitute sexual harassment. This is mainly because nothing she said or did could be considered severe or pervasive so as to create a hostile work environment.

with a written request that no action be taken as a result of McKenna's conversation with Kagenski. (*McKenna Depo. Tr.* at pp. 158, 160, and *Kagenski Affidvit* at 12.) The written request stated, in relevant part:

> Carol I had come to you on Tuesday, August 31st 2004 strictly, explicitly and only to have casual, "off the record" type of conversation, so that an impartial person be aware of something that could potentially become an issue. It is not, and was not my intent to file a complaint or take any sort of "Action" in regards to the matter. . . . [I am] thereby formally documenting [my] wish that NO ACTION be taken at this time, and thereby formally documenting why the company did not take action in the matter when they were made aware that the situation existed. . . . It is with this document, that I am making it formally known that it is my (emphatic) wish that there be absolutely NO ACTION taken by the company in any way shape or form regarding this matter at this time.

(*Letter from McKenna to Link*, Sept. 1, 2004.) McKenna cannot now assert that Kagenski failed to take appropriate action when McKenna specifically requested she not take any action.

This Court also finds that Link did not unreasonably fail to take appropriate corrective action with respect to McKenna's complaint about Ellis's "Rope Email." McKenna asserts that when he went to complain to Link, she stated, "Ya well, when you get burned a few times like we have, you get a bad attitude" and did not discipline Ellis (*Plaintiff's Motion* at pp. 13-14.) The evidence establishes, however, that McKenna requested that no action be taken by Link for the email sent by Ellis. McKenna sent an email to Link stating, "I debated over an entire weekend on how best to handle the [email sent by Ellis] and decided for harmony's sake it was a better choice to let it blow over peacefully." (*Email to Link* at p. 44.) McKenna cannot now assert that Link's failure to discipline Ellis for the email, for which McKenna specifically requested she not discipline Ellis, was a failure of Nestle to take appropriate action.

Because McKenna has failed to establish several of the prongs for a prima facie case for sexual harassment, Nestle's Motion for Summary Judgment on the claim for sexual harassment is **GRANTED**, and McKenna's Motion for Summary Judgment on that claim is **DENIED**.

### D.  Sex Discrimination

Although never addressed in his Complaint, or in his multiple opportunities to amend his Complaint, McKenna, for the first time, appears to assert a claim of sex discrimination based on disparate treatment in his Motion for Summary Judgment.  Even if this Court entertains McKenna's allegation of sex discrimination, he fails to demonstrate a prima facie case.

A plaintiff in a Title VII disparate treatment case may prove discriminatory intent in one of two ways.  First, a plaintiff may present "credible, direct evidence of discriminatory animus." *Terbovitz v. Fiscal Court*, 825 F.2d 111, 115 (6th Cir. 1987).  Direct evidence is that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. The Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (citations omitted). Moreover, direct evidence requires that the fact finder cannot "draw any inferences in order to conclude the challenged employment action was motivated at least in part by prejudice . . . " *Id.*  Because of this, it is the "rare situation when direct evidence is readily available." *Kline v. TVA*, 128 F.3d 337, 348 (6th Cir. 1997).

A plaintiff may also establish discriminatory intent without direct evidence under the three-part framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248 (1981).  If the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the decision.  *Burdine*, 450 U.S. at 253-54.  If the

employer meets its burden of production, the plaintiff can still prevail by showing that the proffered reason is a pretext for discrimination. *Id.* at 256.

McKenna contends that he has evidence that constitutes direct evidence of discriminatory intent. This Court finds that the record is devoid of evidence that requires the conclusion that unlawful discrimination was at least a motivating factor in his termination. Since McKenna failed to present direct evidence of discriminatory intent, his claim is analyzed under the test outlined in *McDonnell Douglas* and *Burdine*.

To establish a prima facie case of gender discrimination under Title VII, McKenna must demonstrate that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; (4) he was replaced by a person outside the protected class, or treated differently than similarly situated non-protected employees. *McDonnell Douglas*, 411 U.S. 792 at 802; *Burdine*, 450 U.S. 248 at 248; *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007).

As to the second prong, there are two different actions that McKenna asserts constitute an adverse employment action. The first action is that Goss was granted an off-site meeting by Link, but that McKenna was not granted the same off-site meeting. The second action is McKenna's termination.

McKenna argues that when Link held an off-site meeting at her condo with Goss, and Kagenski, but refused to hold such an off-site meeting with McKenna, that amounted to an adverse employment action. McKenna asserts that the "clandestine" meeting which occurred between Link, Goss, and Kagenski, but not with McKenna, is evidence demonstrating Link's predisposition to discriminate against McKenna. McKenna's assertion that there was

discrimination because Link met with Goss, a female, but not with McKenna, a male, is without legal basis. An adverse employment action is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1999)). An off-site meeting between three female co-workers clearly does not constitute an adverse employment action.[6]

McKenna's termination constitutes an adverse employment action. McKenna, nevertheless, cannot establish the fourth prong of the prima facie case because he cannot demonstrate that he was treated differently than a similarly situated employee with respect to the termination action. McKenna complains that Ellis was not terminated for her violation of the ECP, but he was terminated, so he was treated differently. As already analyzed by this Court, Ellis was not "similarly situated" to McKenna because she did not deal with the same supervisor as McKenna, nor did they share the same position or job duties (she was an accounting clerk, and McKenna was an Information Systems Technician). More significantly, Ellis did not engage in the same conduct as McKenna. Ellis received a Final Written Warning for violating Nestle's ECP, but Ellis' violations were for excessive use of emails, *not* for sending and receiving sexually explicit emails. (*Kagenski Affidavit* at pp. 5-6.) "[I]t is the discrimination plaintiff's burden to establish that the other employee's acts were of 'comparable seriousness' to his or her

---

[6]In addition, the record shows that McKenna's email to Link requesting an off-site meeting indicated that a conversation was not urgent (using words to describe the desired time of the meeting as "whenever, today, tomorrow, next week . . .") and even after Link's response to McKenna inviting him to meet the following week, McKenna's response continued to impress that meeting with Link was not critical ("it's 100% up to you . . . it's nothing URGENT"). (*Email to Kagenski,* Sept. 15, 2004.) McKenna gave no indication that his conversation was a pressing matter, yet faults Link for sex discrimination by not granting him an off-site meeting.

own infraction." *Summerville v. Ross/Abbot Labs*, No. 98-3517, 1999 WL 623786, at *19 (6th Cir. Aug. 10, 1999) (quoting *Mitchell*, 964 F.2d 577 at 583). Thus, McKenna cannot demonstrate a similarly situated, non-protected employee was treated differently than McKenna.

Because McKenna cannot establish the fourth prong of the prima facie case for sex discrimination based on disparate treatment, Nestle's Motion for Summary Judgment on the claim for sex discrimination is **GRANTED**, and McKenna's Motion for Summary Judgment on that claim is **DENIED**.

## V.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Nestle's Motion to Strike, **GRANTS** Nestle's Motion for Summary Judgment with respect to all of McKenna's claims, and **DENIES** McKenna's Motion for Summary Judgment with respect to all of McKenna's claims. This case is **DISMISSED**. All remaining pending motions are **MOOTED**.

**IT IS SO ORDERED**.

s/  Algenon L. Marbley
**ALEGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED**: **March 31, 2009**